## Mutual of Omaha Insurance Company, Appellant, v. Bosses.

Argued November 15, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William J. Toy,* with him *George A. Spohrer* and *Walter B. Gibbons,* for appellant.

*Perry J. Shertz,* with him *Rosenn, Jenkins & Greenwald,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 9, 1968:

On August 1, 1964, Fred F. Bosses, member of the B'nai B'rith, executed an application form for certain insurance benefits under a Major Medical Plan offered by the Mutual of Omaha Insurance Company to members of B'nai B'rith, and, in due course, a certificate of insurance was issued to him. Within the two-year period provided under the policy, the insurance company filed an action in equity to rescind the insurance policy on the basis that Bosses had withheld from his answers on the application form certain medical history which indicated he had suffered in the past from a subtotal gastrectomy and a ventral hernia, also arthritis, fibrositis of the left arm, prostatic hypertrophy and disc trouble to his back, none of which medical information the Company alleged had been disclosed by Bosses in his application.

The defendant filed preliminary objections in the nature of a demurrer, contending that, by the terms of the master policy, under which the certificate was issued by the plaintiff, right of rescission was excluded. The Court of Common Pleas of Luzerne County sustained the preliminary objections and dismissed the complaint. The plaintiff appealed.

Paragraph 2 of Part C of the policy states: "Sicknesses for which the Member has received medical treatment or advice prior to the date of application will not be covered unless full disclosure of such medical treatment or advice was made on the application, and the Company issued a Certificate."

If the applicant misrepresented himself in the application the most the insurance company can exact is refusal to pay benefit for the sicknesses in controversy, i.e., the arthritis, fibrositis, etc. The insurance company, however, does not stop with merely denying coverage for the indicated infirmities. It seeks to cancel the entire policy. For a broken finger it wishes to saw off an arm. This it cannot do because the clear language of the policy does not permit it. If failure to disclose certain medical information was to work a forfeiture of the entire policy, that contingency could have been, and should have been, so stated. The fact that it was not so declared is evidence that such a drastic termination of the policy was never intended.

When, in Part C, paragraph 2, the insurer declared that undisclosed sicknesses would not be covered by the policy, it excluded rescission. *Expressio unius est exclusio alterius. Fazio v. Pittsburgh Railways Company,* 321 Pa. 7, 11.*

Part J2 of the policy reads: "If, under the terms of the preceding paragraphs, evidence of individual in-

---

* Although in this case the reference was to a statute, the rule of construction indicated is equally applicable to the construction of contracts.

surability is required, an eligible Member shall become an insured Member on the date his application is accepted by the Company. If evidence of insurability is waived, an eligible Member shall become an insured Member on the later of (a) the effective date of this policy or (b) the date his application is received by the Company."

The company contends that since "evidence of individual insurability" was not waived, it has the right to cancel the policy. Nowhere in the policy is the phrase "evidence of individual insurability" defined. However, accepting the face meaning of the words, the only possible interpretation is that, should the company question insurability of the applicant, he will be required to demonstrate that he is insurable under the terms of the application. Should he fail to submit that proof, his application will be rejected *unless the insurance company waives evidence of insurability.*

How is the applicant to know whether he is required to submit proof of individual insurability? Obviously, by notice from the company. But the company here directed no communication to the applicant after he had signed his application. But, the company argues, the application itself is "evidence of individual insurability" and, since that evidence was allegedly false, there was no insurability, and no waiver of the requirement. This argument ignores language, logic, and lucidity. The first sentence in paragraph 2, Part J of the master policy states: "The Company reserves the right to require each Member to furnish, at no expense to the Company, evidence of individual insurability satisfactory to the Company."

If the application *is* the evidence of individual insurability, why would the policy state that the company reserves the right to require, etc.? "To require" means to ask for something later. The Company failed to ask for anything later, or at any time.

Paragraph 2, subparagraph 3 states: "If and when evidence of insurability is waived, the company may still require an applicant to answer all questions on the application for insurance."

If the application is the evidence of insurability, the modifying phrase, "if and when evidence of insurability is waived," would obviously be without meaning or significance.

Paragraph 6, Part J, says, inter alia: "All statements made by the Policyholder and the Member shall be deemed representations and not warranties. No such statement by the Policyholder shall avoid this policy unless it is contained in the Policyholder's written application, and no such statement shall avoid the individual Member's insurance under this policy unless it is contained in the Member's written application. No such statement shall avoid the individual Member's insurance if evidence of individual insurability has been waived by the Company."

To regard the application itself as evidence of insurability would be to regard other portions of the contract as meaningless surplusage which construction would violate the cardinal principle of interpretation that an insurance policy must be construed in such a manner as to give effect to all of its provisions. *Galvin v. Occidental Life Insurance Co.*, 206 Pa. Superior Ct. 61. Nor may it be construed in such a way as to render any part of it useless and unnecessary. *Quigley v. Western and Southern Life Insurance Co.*, 136 Pa. Superior Ct. 27.

The lower court properly said: "The plaintiff did not at any time require evidence of the defendant's individual insurability, and, therefore, insofar as the master policy is concerned, because of the waiver of insurability, the statements would not avoid the individual Member's insurance."

It is clear from all that has been presented that the insurance company waived compliance with its requirement of evidence of individual insurability since its failure to ask the applicant to submit such evidence is practically conclusive of the issue. "Waivers need not be express; they may be inferred from acts which recognize a liability or a condition existing contrary to a statement made in the policy which, to them, appears not of sufficient importance to deter them from issuing the policy. The company does not consider such requirement as a hazard in view of many circumstances." *Hoffman v. Mut. F. Ins. Co.,* 274 Pa. 292, 300.

It is a matter of common knowledge that, in the competitive business of selling insurance, companies often endeavor to woo prospective buyers by offering inducements in the way of waiver of stringent physical examinations, proofs of insurability, and assurances that statements in the applications will be considered representations and not warranties. They should not be allowed, then, later on, to rescind their contract because they conclude that they have insured a bad risk. The company here was dealing not with an individual insurance policy, but with an international men's service organization with a potential of tens of thousands of individual certificates of insurance, which involved the prospect of hundreds of thousands of dollars of insurance premiums. In order to obtain this lucrative business, the company made offers, it assured waivers, it cannot now throw off the ship of insurability those who cannot swim when they announced that swimming was not a requirement for insurability.

In *Metropolitan Life Insurance Company v. Cleveland,* 11 S.W. 2d 434, the Court said: "If, in order to secure business, the company is willing to forego some of the grounds of forfeiture allowed by Statute within the limits above indicated, effect should be given to its agreement, as it may contract for less, but not for

more, than the statute allows it." Judge McCANDLESS, speaking for the Court, said further: "It is clear that this stipulation was an inducement to procure the insurance, and that it was intended by the parties to be the ground of forfeiture upon which the company could rely, and being specifically stated, must exclude all other grounds of a general nature, and should be construed as being inserted in lieu of all others."

As far back as 1848, this Court said: "It was always law, that parties might contract to renounce privileges allowed them by law; and such renunciation is binding on them." (*North Western Insurance Co. v. Phoenix Oil and Candle Co.*, 31 Pa. 449-450).

In conclusion, the insurance company must be held bound to the terms of the policy it has written. When the Company issued its certificate of insurance to the insured without requiring or receiving from him anything other than his application for insurance, the Company waived evidence of his individual insurability. By no stretch of logic or the terms of the policy can the application be construed as a demand for evidence. The lower court properly found that there was no ground for rescission and that the complaint in equity had to be dismissed.

Decree affirmed; costs to be borne by appellant.

———

CONCURRING OPINION BY MR. JUSTICE EAGEN:

I agree with Mr. Justice MUSMANNO that this insurance contract distinguishes between the application, on the one hand, and "evidence of insurability," on the other hand; that the company waived "evidence of insurability" by failing to require it; and that consequently the false statements on the defendant's application are not grounds for avoiding his insurance. Therefore the decree of the lower court should be affirmed.

Mr. Justice JONES and Mr. Justice ROBERTS join in this concurring opinion.

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

Plaintiff-appellant insurance company sought rescission of an insurance policy on the grounds of alleged nondisclosure of certain essential information in appellee's application for insurance. Appellee Bosses filed preliminary objections in the nature of a demurrer arguing that by the terms of the master policy under which the certificate was issued to the appellee, right of rescission for nondisclosure was excluded. The court below sustained the preliminary objections, on two grounds. The first was that appellant had elected the remedy of no coverage for nondisclosure, and that remedy precluded rescission for nondisclosure. The second was that the policy provided that no statement by the policyholder should avoid the policy if evidence of individual insurability is waived by the company, and that appellant, by failure to ask for evidence of individual insurability, had waived it. The majority opinion affirms the decree of the court below for the same reasons as those relied upon by the chancellor.

I can agree with neither of those reasons. The majority relies first on Paragraph 2 of Part C of the policy, which states: "Sicknesses for which the Member has received medical treatment or advice prior to the date of application will not be covered unless full disclosure of such medical treatment or advice was made on the application, and the Company issued a Certificate." The majority holds that by providing this remedy for nondisclosure, the company, by the maxim, *expressio unius est exclusio alterius,* excludes all others. Yet that maxim has no application where, as here, the remedy expressed and the remedy allegedly excluded differ in their scope. Under no circumstances could the company rescind after two years, since under Part J, Paragraph 8, the policy was incontestable after that period. However, Part C, Paragraph 2, excludes from coverage nondisclosed illnesses *even after the noncon-*

*testability period.* To read into this exclusion of coverage an intention to forego the essential contractual remedy of rescission for fraud is a perversion of rules of construction.

The second reason the majority relies upon for sustaining the preliminary objections is that the company waived evidence of individual insurability, and the policy precludes rescission on the basis of the policyholder's statements where evidence of individual insurability is waived by the company.[1]

The majority's reasoning in finding waiver as a matter of law defies all logic. The majority states that the company's failure to question the insurability of appellant constituted a waiver of individual insurability. In my view, the majority's starting point is all wrong. In the usual situation, evidence of individual insurability is required. Silence on the part of the company as to evidence of individual insurability, when there is no duty to speak, can hardly constitute waiver. Appellant provides a logical interpretation of "waiver of individual insurability". Appellee was insured under a group policy. Under the terms of the group policy, if a certain percentage of participation by the group was reached, then for a period of time, an "open enrollment" period was allowed.[2] Under open enroll-

---

[1] Part J, Paragraph 6 says: ". . . All statements made by the Policyholder and the Member shall be deemed representations and not warranties. No such statement by the Policyholder shall avoid this policy unless it is contained in the Policyholder's written application, and no such statement shall avoid the individual Member's insurance under this policy unless it is contained in the Member's written application. No such statement shall avoid the individual Member's insurance if evidence of individual insurability has been waived by the Company."

[2] Part J, Paragraph 2 says: "EFFECTIVE DATE OF INDIVIDUAL INSURANCE. The Company reserves the right to require each Member to furnish, at no expense to the Company, evidence of individual insurability satisfactory to the Company. The enrollment will be

ment, any eligible member (a member of the group and under 70 years of age) must be issued unrestricted coverage. This is the meaning of waiver of evidence of individual insurability—the necessity of admitting any applicant when the required percentage is reached.

When one realizes that waiver is not the norm, then he refrains from the verbal acrobatics engendered by an attempt to hold that the application itself is not

conducted on a Lodge and Chapter basis with each Lodge or Chapter permitted to qualify for waiver of selection based on a specific participation figure according to the size of the Lodge or Chapter as follows: (a) for groups of less than one hundred members, seventy-five per cent of those eligible must apply, (b) for groups of one hundred to two hundred members, sixty per cent of those eligible must apply and (c) for groups of more than two hundred members, fifty per cent of those eligible must apply. In the event a Lodge or Chapter attains the participation figure required for waiver of selection, a sixty-day 'open enrollment' period will be allowed for such Lodge or Chapter during which time all eligible Members who apply will be issued unrestricted coverage under Plan B. Each year thereafter a thirty-day 'open enrollment' period will be permitted provided that such Lodge or Chapter has maintained the percentage of insured participation required for the sixty-day 'open enrollment' period.

"The Company shall always retain the right to require, at no expense to the Company, satisfactory evidence of insurability from (a) a Member, if application is made after the close of any of the open enrollment periods referred to in the preceding paragraph, (b) a Member, if he applies for reinstatement of his insurance which has terminated because of failure to pay premiums when due and (c) a Member who applies for an increase in benefits.

"If and when evidence of insurability is waived, the Company may still require an applicant to answer all questions on the application for insurance. Members who are hospitalized at the time of application are not eligible.

"If, under the terms of the preceding paragraphs, evidence of individual insurability is required, an eligible Member shall become an insured Member on the date his application is accepted by the Company. If evidence of insurability is waived, an eligible Member shall become an insured Member on the later of (a) the effective date of this policy or (b) the date his application is received by the Company."

evidence of individual insurability. The clauses quoted by the majority do not prove that the application is not evidence of individual insurability; they are perfectly consistent with the application's constituting evidence of individual insurability. And, in fact, common sense would dictate that the application is evidence of individual insurability. Yet it is not even necessary to prove that fact to show that there has been no waiver. Where the company has done nothing to indicate a waiver, then there is no waiver.

I dissent and would overrule the preliminary objections.

Mr. Justice COHEN joins in this dissenting opinion.