587 A.2d 865

**The INSURANCE FEDERATION OF PENNSYLVANIA, INC., Petitioner,**

v.

**Honorable Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 5, 1990.

Decided Feb. 27, 1991.

230

Samuel R. Marshall, Philadelphia, for petitioner.

Richard J. Enterline, Asst. Counsel, with him, Victoria A. Reider, Deputy Chief Counsel, and Linda J. Wells, Chief Counsel, Harrisburg, for respondent.

Before CRAIG, President Judge, and COLINS, PALLADINO, SMITH, PELLEGRINI, KELLEY, and BYER, JJ.

CRAIG, President Judge.

The Insurance Federation of Pennsylvania (federation), appeals a declaratory order of the Insurance Commissioner of the Commonwealth of Pennsylvania (commissioner), which outlines the policy of the Commonwealth of Pennsylvania Insurance Department (department), regarding the use of individual medical underwriting in small-group health insurance coverage. We affirm.

The general issue presented in this case is whether insurers may exclude individuals from small-employer group health insurance for medical reasons. The commissioner's declaratory order stated that insurers may not exclude individuals from small-employer group health policies for medical reasons.

The federation is a non-profit corporation representing, among others, domestic and foreign insurance companies licensed to sell group health insurance coverage in Pennsylvania. The federation petitioned the commissioner for a hearing and the issuance of a declaratory order to determine the department's policy regarding the lawfulness of individual medical underwriting of small-group health insurance coverage.

The commissioner, in her declaratory order dated May 18, 1990, found that individual medical underwriting is the insurance industry's practice of reviewing the medical condition of each individual in a group to determine whether to cover that individual under the group policy. The commissioner further found that insurers use medical underwriting criteria to exclude persons from small employer-based policies but do not use medical underwriting criteria to exclude persons from large employer-based group policies.

The commissioner found that "small groups are usually defined by insurers as those groups insuring less than 10 to 20 lives. The actual limit on the number of lives is determined by each individual company and varies by company." (Finding of Fact No. 6.) The commissioner also found that insurance companies do not practice individual underwriting

with large groups, because they exclude the entire group if it finds the group too risky.

Based upon these facts and the Unfair Insurance Practices Act,[1] the commissioner concluded that insurers could no longer use individual medical underwriting to exclude individuals from small-group health insurance. The commissioner stated in her order:

> It is undisputed that insurers do not currently exclude individuals for medical reasons from large employee groups. The determination to exclude individuals is based solely on the size of the group and the employer rather than on any specific characteristics of the individual. Thus, an individual with a certain medical profile would be accepted for coverage if he worked for an employer who had 21 employees but denied coverage with the identical profile, if his employer had, for example, only nine employees. This practice discriminates between individuals of the same class and hazard and is prohibited by Section 5(a)(7)(ii) of the Unfair Insurance Practices Act and Section 626 of the Insurance Company Law.

Sections 5(a)(7)(ii) and (iii) of the Act, 40 P.S. §§ 1171.-5(a)(7)(ii) and (iii), state:

> (a) 'Unfair methods of competition' and 'unfair or deceptive acts or practices' in the business of insurance means:
>
> . . . .
>
> (7) Unfairly discriminating by means of:
>
> . . . .
>
> (ii) Making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy, fees or rates charged for any policy or contract of insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract, or in any other manner whatever.

1. Act of July 22, 1974, P.L. 589, *as amended,* 40 P.S. §§ 1171.1–1171.15.

(iii) Making or permitting any unfair discrimination between individuals of the same class and essentially the same hazard with regard to underwriting standards and practices or eligibility requirements by reason of race, religion, nationality or ethnic group, age, sex, family size, occupation, place of residence or marital status ...

■ The federation now appeals to this court, seeking to overturn the declaratory order, or in the alternative, to remand the case for further testimony. The federation contends that the order of the commissioner deprived the federation of its due process rights, contradicts Pennsylvania statutory and case law, violates public policy, and that the commissioner acted outside the scope of her authority.[2]

## 1. Due Process.

The federation argues that the commissioner deprived the federation of its due process rights because the federation did not have notice of the Unfair Insurance Practices Act, the statute the commissioner relied upon in her declaratory order. The federation contends that neither it nor the department raised the applicability of the Unfair Insurance Practices Act in any petition, pleading or hearing. Additionally, the federation argues that the Unfair Insurance Practices Act was not the basis of a 1988 order similar to the present case.[3]

Initially, we note that:

**2.** Our standard of review of an administrative agency's adjudication is confined to whether an error of law was committed, whether necessary findings are supported by substantial evidence, or any constitutional rights have been violated. *R.A. Freudig Associates v. Pennsylvania Insurance Department,* 110 Pa.Commonwealth Ct. 311, 532 A.2d 509 (1987).

**3.** In *In Re: The Guardian Life Insurance Company of America,* Insurance Department Docket No. R87–8–3 (1988), the insurer attempted to include in it's group health insurance an amendment which authorized the exclusion of individuals with disorders or diseases specified by the insurer. The commissioner disallowed this amendment, basing her decision on the Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended,* 40 P.S. § 756.2, and not the Unfair Insurance Practice Act relied upon in the present case.

Under Sections 504 and 101 of the Administrative Agency Law due process in the form of notice and an opportunity to be heard is required only when a substantial personal or property right or other similar interest is affected by a final order. An individual has a property interest mandating due process protection only when he has a legitimate claim of entitlement to the asserted right ... In other words, Petitioners must have an enforceable expectation governed by a statute or contract. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, [92 S.Ct. 2701, 33 L.Ed.2d 548,] (1972).

*Sweeting v. Pennsvlvania State Police*, 95 Pa.Commonwealth Ct. 45, 48–49, 503 A.2d 1126, 1127 (1986).

Furthermore, the right to write insurance is a substantial right deserving of procedural protection if the commissioner terminates that right. *Tsolo v. Foster*, 127 Pa.Commonwealth Ct. 335, 561 A.2d 861 (1989).

■ In the present case, the federation is not seeking review of an order which terminates its right to write insurance. However, because the order does terminate a previously acceptable method of writing health insurance, the federation is entitled to the due process procedures of notice and a right to a hearing

■ The federation asserts that it lacked notice of the unfair discrimination rationale relied upon by the commissioner, and argues that *Pennsylvania Social Services Union v. Department of Labor and Industry*, 105 Pa.Commonwealth Ct. 264, 524 A.2d 1005 (1987), entitles the federation to notice that the commissioner would rely upon the Unfair Insurance Practices Act.

However, *Pennsylvania Social Services Union* is irrelevant in the present case. *Pennsylvania Social Services Union* concerned an employee fired from his job for misconduct, and the court held that the employer must notify the employee of the specific charges of misconduct filed against him. *Pennsylvania Social Services Union* does not stand for the proposition that a reviewing tribunal notify the

parties as to the law it will apply in a case. Therefore, *Pennsylvania Social Services Union* is not applicable to the present case.

The federation also contends that because the commissioner did not rely upon the Unfair Insurance Practices Act in the *Guardian Life* case, the commissioner deprived the federation of notice.

However, the federation had notice that the commissioner might rely upon the Unfair Insurance Practices Act in the present case because the federation stated in its petition for declaratory order that they wanted the commissioner to decided the issue by reviewing all "Pennsylvania insurance laws ..." Although the commissioner decided the *Guardian Life* case on different grounds, the Unfair Insurance Practices Act is part of Pennsylvania insurance law. Therefore, because all relevant laws are naturally applicable to any case at any time, the federation's contention of lack of notice of the applicability of the Act is without merit.

The federation also argues that the commissioner deprived them of its due process rights because neither the department nor federation presented evidence regarding unfair discrimination at the hearing.

The evidence presented by both sides at the hearing did not deal with discrimination per se, but the evidence did address the practice of individual underwriting of small groups, which the commissioner characterized as discriminatory. Robert Dobbins, Vice President of Guardian Life Insurance Company of America, testified that his company uses individual medical underwriting with small groups but not large groups. Because the commissioner must make findings of fact and conclusions of law based upon the evidence presented, and because substantial evidence indicates discriminatory practices, the commissioner's conclusion did not effect a deprivation of due process rights.

## 2. Discrimination.

The federation's next contention is that the commissioner erred in deciding that individual underwriting of small-

employer group health coverage is discriminatory under the Unfair Insurance Practices Act.

██ The federation argues that the commissioner violated § 1922 of the Statutory Construction Act, 1 Pa.C.S. § 1922(1), which provides: "[When interpreting a statute] ... the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." The example cited by the federation to prove the alleged absurdity is that insurance companies would have to charge individuals in large and small groups the same rate to avoid rate discrimination even though per-policy administrative costs for small group coverage are higher than large groups.

However, evidence offered at the hearing refutes the federation's implication that losses will result from a prohibition of individual underwriting in small groups. Thomas Higgins, President of National Security General Insurance Company, a company that does not use individual underwriting with small-employer based groups, testified:

Q. How would you term your financial results?

A. I would say that we have been able to pretty much maintain, hit our targets over the last two years.

. . . .

Q. Would it be fair to say medical inflation and utilization contributes to your rate increase?

A. Right. Medical inflation being a larger component.

Thus, substantial evidence suggests that the commissioner's order, if carried out, would not result in absurdity.

██ The federation also contends that the commissioner erred in not making a specific finding that the individuals who receive small group coverage are in the same class and hazard as those who receive large group coverage. The federation cites *Underkoffler v. State Employes' Retirement Board*, 61 Pa.Commonwealth Ct. 1, 432 A.2d 319 (1981), for the proposition that an agency's ruling must be reversed or remanded where it lacks crucial findings of fact.

The commissioner, however, did state in her findings of fact that insurers use medical underwriting to exclude individuals under small group policies but not large group policies (Finding of Fact No. 4). The commissioner also stated that insurance companies pool small group health policies into multiple employer trusts (MET's), which often exceed the number of lives insured in a large group, thus spreading the risk like large groups (Finding of Fact No. 14).

Although the commissioner did not specifically state that individuals in small group coverage are in the same class as large group members, the commissioner's findings of fact, taken as a whole, support that conclusion. Furthermore, the prevailing party is entitled to the benefit of every inference which can be logically drawn from the evidence. *Pennsylvania Game Commission v. Pennsylvania Department of Environmental Resources*, 97 Pa.Commonwealth Ct. 78, 509 A.2d 877, *aff'd.* 521 Pa. 121, 555 A.2d 812 (1989). Therefore, the lack of a specific finding regarding individuals receiving small-employer group coverage is not fatal to the order.

The federation also contends that even if there had been a finding of fact that individuals in small groups are of the same class and risk as those in large groups, it would lack any evidentiary support.

At the outset, the fact that the commissioner did not make such a finding makes this argument irrelevant. Furthermore, the commissioner determined that small group members are in the same category as large group members because MET's spread the risk among many small groups.

The testimony of Robert Dobbins revealed the following:

Q. Mr. Dobbins, would you agree with my statement that by pooling the claims experience of thousands of [small] groups any rate increase is minimized by spreading it across an entire block of business such that an individual group does not bear the whole load?

A. Yes.

Additionally, department witness Sally Ludwig testified as follows:

Q. Could you explain for us what a multiple employer trust is?

A. A multiple employer trust is a mechanism that allows small employers to have the advantages of a large group and that primarily is the pooling of the experience of the small employers into a single pool.

Thus, there is substantial evidence supporting the commissioner's finding that small group members are in the same class as large group members.

### 3. Questions of Law.

■ The federation's third contention is that the commissioner's order conflicts with the statutory and case law of Pennsylvania. The federation first argues that, because § 621.2(d)(2) of the Insurance Company Law, 40 P.S. § 756.-2(d)(2), specifically prohibits an insurer from using medical underwriting when a person under a group health policy converts to an individual policy, the commissioner cannot disallow medical underwriting in the different situation presented here.

The federation relies upon the maxim "expressio unius est exclusio alterius" (the expression of one thing implies the exclusion of another—negative implication) for its interpretation of the legislature's intent regarding medical underwriting of small-employer group health insurance. The federation argues that the commissioner may not deny insurance companies the right to use individual medical underwriting in small group health insurance because the legislature did not specifically disallow medical underwriting in small group health insurance as it did in § 621.2(d)(2) of the Insurance Company Law.

Initially, we note that this court stated:

An administrative agency has wide discretion when establishing rules, regulations and standards, and also in performance of its administrative duties and functions ...

A reviewing court cannot overturn an agency's exercise

of its discretion absent proof of fraud, bad faith or a blatant abuse of discretion.

*Pennsylvania Industries for the Blind and Handicapped v. Department of General Services*, 116 Pa.Commonwealth Ct. 264, 269, 541 A.2d 1164, 1166 (1988).

Additionally, when interpreting a statute, an administrative agency commits an abuse of discretion when the agency's interpretation conflicts with the clear and plain meaning of that statute or regulation. *Monessen Southwestern Railway Co. v. Pennsylvania Public Utility Commission*, 507 Pa. 586, 493 A.2d 666 (1985).

Section 621.2(d)(2) provides in relevant part that:

(d) A group policy delivered or issued for delivery in this state which provides hospital, surgical or major medical expense insurance ... shall provide that an employe or member whose insurance under the group policy has been terminated for any reason, including discontinuance of the group policy in its entirety or with respect to an insured class, and who has been continuously insured under the group policy ... for at least three months immediately prior to termination, shall be entitled to have issued to him by the insurer a policy of health insurance (hereafter referred to as the converted [individual] policy). ... Issuance of a converted policy shall be subject to the following conditions:

. . . .

(2) The converted [individual] policy shall be issued without evidence of insurability.

Because § 621.2(d)(2) is a statute relating to persons seeking individual insurance coverage, and does not address small-employer group health insurance, the commissioner's order is not in conflict with § 621.2(d)(2).

Furthermore, the use of negative implication as a tool for gleaning legislative intent in this case is not a persuasive argument. This court has stated:

The Pennsylvania Supreme Court has recognized, however, that the maxim of negative implication does not

constitute an inflexible rule. *See Consumers Education and Protective Association v. Nolan,* 470 Pa. 372, 368 A.2d 675 (1977), in which the court observed 'that merely to hold automatically that the legislature's intent does not encompass something not specifically included in a statute that contains specific provisions can sometimes thwart that intent.'

Significantly, the legislature did not mention negative implication as an interpretive principle in the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991.

*Big Beaver Falls Area School District v. Cucinelli,* 112 Pa.Commonwealth Ct. 341, 346–7, 535 A.2d 1205, 1207 (1988).

Therefore, because the commissioner did not rule contrary to the plain meaning of § 621.2(d)(2), and because negative implication is not an invariable test for discovering legislative intent, the commissioner did not abuse her discretion or commit an error of law in not applying § 621.2(d)(2) to allow medical underwriting.

The federation next contends that because a provision of the group *life* insurance law specifically permits individual medical underwriting, the commissioner erred in deciding that medical underwriting is not permissible in small-employer group health insurance.

Specifically, the federation argues that because § 2 of the Group Life Law, 40 P.S. § 532.2(2),[4] permits medical evidence of insurability, and § 621.2(a)(4) of the Insurance Company Law, 40 P.S. § 756.2(a)(4), cross-references the Group Life Law in that § 621.2(a)(4) permits insurers to issue group health insurance policies to groups authorized under the Group Life Law, the commissioner is required to permit the use of medical evidence in small-employer group health insurance.

As in the federation's previous argument, the statute which the federation now relies upon to contradict the commissioner's order is not directly related to individual

4. Act of May 11, 1949, P.L. 1210, *as amended,* 40 P.S. § 532.2(2).

medical underwriting in small-employer group health insurance. Because the commissioner's order does not conflict with the plain meaning of the statute, this court cannot overturn it.

The federation, citing *Mutual of Omaha Insurance Company v. Bosses*, 428 Pa. 250, 237 A.2d 218 (1968), for the proposition that individual medical underwriting in small-employer group health insurance is permissible, argues that the commissioner erred as a matter of law.

The *Mutual of Omaha* case, however, is not applicable to the present case. In *Mutual of Omaha*, the issue was whether the insurer properly rescinded the appellee's policy because the appellee withheld evidence of medical history. The Pennsylvania Supreme Court treated the issue as a contractual claim and did not discuss whether the insurance laws of Pennsylvania prevented or allowed medical underwriting in small-employer group health insurance.

### 4. Public Policy.

■ The federation's fourth contention is that the commissioner's order is contrary to the Commonwealth's public policy of ensuring access to affordable health insurance as set forth in the Health Care Cost Containment Act.[5] The federation argues that the prohibition of individual medical underwriting will result in "anti-selection," which is an insurance industry term describing the process of shopping for lower premiums. The federation's theory is that healthier, less risky groups will switch insurers to obtain lower premiums, thus leaving less healthy groups behind and driving the premiums up further, which in turn will make other groups leave, creating a never-ending cycle of higher premiums for less healthy groups.

The commissioner asserts that her order does not violate public policy because the "anti-selection" theory is speculative and greatly exaggerated by the federation. Additionally, the commissioner argues that individual medical underwriting is contrary to public policy.

5. Act of July 8, 1986, P.L. 408, *as amended,* 35 P.S. § 449.2.

There is substantial evidence supporting the commissioner's position that her order does not thwart public policy. Thomas Higgins testified that, with no individual underwriting in small groups, his company's renewal rate is 90% and that premium increases in the last four years resulted from inflation in the medical industry, not the absence of individual medical underwriting. Thus the commissioner's theory regarding anti-selection is supported by substantial evidence.

Additionally, Bob Griss, an expert in the study of accessibility and affordability of private health insurance testimony testified as follows:

Q. Mr. Griss, what are your findings concerning the coverage of private health insurance among those in better health or poorer health?

A. People in poorer health are less likely to have private health insurance ...

. . . .

Q. Can you explain for us how medical underwriting criteria creates access barriers?

A. Insurance companies when selling health insurance are able to estimate the probability of risk using whatever criteria they choose. They have tended to choose criteria that they feel helps them in the competitive marketplace in reducing risk.

Therefore, there is substantial evidence supporting the commissioner's position that the prohibition of individual medical underwriting does not violate the public policy of the Commonwealth.

### 5. Scope of Authority.

The federation's fifth and final contention is that the commissioner exceeded her scope of authority by interpreting the Unfair Insurance Practices Act in a manner that prohibits individual medical underwriting in small-employer group health insurance. The federation alleges that the wide ranging effect of this order goes beyond the commissioner's authority to interpret insurance law.

The commissioner is not acting outside the scope of her authority. The federation concedes that the commissioner has the authority to interpret, apply and enforce the insurance law of the Commonwealth. The commissioner has been given the power, from the General Assembly through the Unfair Insurance Practices Act, to prohibit unfair discrimination: The commissioner is empowered to determine whether an insurer has violated the Act, 40 P.S. § 1171.7, and the commissioner is also empowered under the Act to hold administrative hearings and issue penalties. 40 P.S. §§ 1171.8–9. Therefore, this order is within the commissioner's scope of authority.

Accordingly, the order of the commissioner is affirmed.

## ORDER

NOW, February 27, 1991, the order of the Insurance Commissioner, No. M89–07–03, dated May 18, 1990, is affirmed.