Ahmad ABDUL JABBAR–AL SAMAD,
Hud Abdul Khabir, Talha Abd'Allah,
and Sa'id Abdul 'Ala, Plaintiffs,

v.

Martin L. HORN, Joseph T. Lehman, and
Donald T. Vaughn, Defendants.

No. 95–1807.

United States District Court,
E.D. Pennsylvania.

Dec. 1, 1995.

Ahmad Abdul Jabbar–Al Samad, Grater-ford, PA, pro se.

Hud Abdul Khabir, Graterford, PA, pro se.

Talha Abd'Allah, Graterford, PA, pro se.

Sa'id Abdul 'Ala, Graterford, PA, pro se.

Sue Ann Unger, Office of Attorney General, Philadelphia, PA, for defendants.

### OPINION

GAWTHROP, District Judge.

■ The pro se plaintiffs in this Section 1983 action, Muslim inmates at SCI–Graterford, challenge the constitutionality of a new prison rule prohibiting inmates from leading religious services. Before the adoption of this rule, prisoners could choose a religious leader from the prison population, and this leader would be able to conduct prison services. The new policy, described in the Department of Corrections' Bulletin 819–1, provides that only outside religious leaders may conduct prison religious services, and these outside coordinators must be chosen by prison administrators.

The defendants explain that the new policy was established to prevent possible breaches in security that may arise when inmates attain power over other inmates. The plaintiffs, however, allege that Islam requires them to choose the Imam, their religious leader, from within their congregation; an outside leader would violate this tenet of Islam. Thus, they argue that the Free Exercise Clause of the First Amendment prohibits the enforcement of this policy. The plaintiffs also observe that inmate civic organizations can continue to pick their leaders from within the prison community. They assert that the Equal Protection Clause of the Fourteenth Amendment prohibits this discrimination between civic and religious groups.

The plaintiffs have moved for a preliminary injunction restricting the enforcement of Bulletin 819–1. The defendants, in turn, have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Upon the following reasoning, I shall deny the motion to dismiss. I shall defer resolution of the motion for a preliminary injunction until after an evidentiary hearing on the motion.

### I. Motion to Dismiss

#### A. Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a cause of action, the factual allegations in the complaint are to be accepted as true. The complaint should be dismissed only if it is clear that no relief could be granted under any set of facts that could be consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *D.P. Enterprises v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984). For the purposes of this motion, all of the plaintiffs' allegations, and all reasonable inferences that can be drawn from them, will be regarded as true.

*B. The Free Exercise Clause*

■ The First Amendment of the Constitution states, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ..." The Free Exercise Clause applies in this case only if the plaintiffs' convictions are grounded in a religious belief, *Wisconsin v. Yoder,* 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972), and if they are sincere, *Frazee v. Illinois Department of Employment Security,* 489 U.S. 829, 832–33, 109 S.Ct. 1514, 1516–17, 103 L.Ed.2d 914 (1989). Both determinations involve questions of fact that I must resolve in the plaintiffs' favor. They have alleged that the Islam religion requires them to choose a leader from within the congregation, and that they are devout Muslims. Thus, the Free Exercise Clause applies.

■ The First Amendment analysis begins with the observation that "prisoners [must] be accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration." *Monmouth County Correctional Institutional Inmates v. Lanzaro,* 834 F.2d 326, 333 (3d Cir.1987) (quoting *Hudson v. Palmer,* 468 U.S. 517, 523, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984). Thus, the court's task is to balance the plaintiffs' constitutional rights against the difficulty of operating an effective and secure prison system, which inevitably requires the limitation of some significant privileges. *Thornburgh v. Abbott,* 490 U.S. 401, 407, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459 (1989); *Allah v. Menei,* 844 F.Supp. 1056 (E.D.Pa.1994).

The plaintiffs allege that Bulletin 819–1 restricts their right to the free exercise of religion. The Supreme Court has held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). The *Turner* Court instructed district courts to consider four factual issues when weighing the reasonableness of the prison regulation at issue. First, there must be a valid, rational connection between the prison rule and the legitimate government interest set forth to justify it. *Id.* at 89–90, 107 S.Ct. at 2261–2262. The defendants contend that security concerns led to the adoption of the rule. The plaintiffs respond that because there has never been any security breach arising from an inmate religious leader's incitement of other inmates, this justification is disingenuous. They allege that Muslims obey those in authority, and no Imam has ever encouraged inmates to disobey prison rules. The plaintiffs have thus presented a colorable claim that the security considerations mentioned by the defendants to justify the new rule are pretextual. *Cf. Howard v. United States,* 864 F.Supp. 1019, 1026–27 (D.Colo.1994) (security concerns cannot justify prohibiting a Satanist from practicing his religion).

■ Second, where there are alternative means of exercising a right that remains open to other inmates, the court should defer to corrections officials in gauging the validity of the rule. *Turner,* 482 U.S. at 90, 107 S.Ct. at 2262. The plaintiffs here assert that Islam requires the selection of an Imam from within the congregation. According to their pleadings, there are no alternative means to their religious expressions, so the prison rule denies them the right to practice their beliefs.

Third, the district court should weigh the impact of the accommodation of the right on prison resources and other inmates. *Id.* The plaintiffs aver that groups had the right to conduct religious meetings, and for over a decade, these groups could choose their leaders from the prison population. They further contend that this practice did not harm other inmates or compromise prison security. These allegations suggest that the effect of continuing the practice would not adversely affect security or other inmates.

Finally, if there are easy alternatives that address the corrections officers' concerns, then these alternatives may suggest that the rule is not reasonable but merely an exaggerated response. *Id.* at 90–91, 107 S.Ct. at 2262. The parties' briefs do not consider such alternatives, so it may be premature to resolve this issue. I observe, however, that it may be possible for an outside Muslim

volunteer simply to attend religious meetings to ensure that the inmate Imam does not incite prisoners or encourage them to disobey institutional rules. This policy would be no more costly than the proposed practice of requiring an outside volunteer actually to lead the services, yet it would allow the prisoners to adhere to their alleged beliefs.

Consideration of these issues gives reason to question whether there exists a logical connection between the challenged rule and the government interest proposed to justify it. Thus, the motion to dismiss the plaintiffs' First Amendment claims must be denied.

### C. The Equal Protection Clause

■ The plaintiffs argue that the prison rule discriminates against religious groups because civic organizations may continue to pick their leaders from within the prison population. The Equal Protection Clause of the Fourteenth Amendment requires that the government treat all similarly situated individuals similarly. *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). The defendants contend that these Equal Protection claims should be dismissed on two grounds. First, they assert that religious groups are not similarly situated to civic groups. Second, even if the groups are similarly situated, the defendants argue that the plaintiffs have failed to allege an Equal Protection violation.

■ To establish that civic and religious organizations are not similarly situated, the defendants draw several distinctions. They say that unlike civic groups, religious groups (1) have a constitutional right to exist, (2) gain their authority from a religious text rather than merely common interests among inmates, and (3) appeal to spiritual and emotional needs rather than business and social interests. Thus, they argue that religious groups are not similarly situated to civic groups.

■ The defendants mistakenly interpret "similarly situated" as "identically situated;" their distinctions between civic and religious groups are not persuasive. Religious and civic organizations may each appeal to their members' spiritual convictions, and they may

be equally successful at inciting emotions. The source of a group's authority, whether divine or secular, is more a justification for the classification than a distinction between the two types of organizations. Finally, whether a group has a constitutional right to exist is irrelevant to whether it is similarly situated to a group that does not have a constitutional right to exist. Civic and religious prison groups are similarly situated for the purpose of Equal Protection analysis, so the Fourteenth Amendment applies.

■ The general rule governing Equal Protection analysis provides that in order to establish a violation under the Equal Protection Clause, a plaintiff must show that there could be no "rational basis" for being treated differently from other individuals similarly situated to him. This general rule does not apply, however, when a classification is based on an inherently suspect distinction, such as race, religion, or sex, or curtails fundamental rights. *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976). At first glance, it may appear that the prison rule at issue here may be subject to heightened scrutiny because it distinguishes between groups on the basis of religion. Such is not the case here, however, as the Supreme Court has held that a rule that applies equally to all religions offends neither the Free Exercise Clause nor the Establishment Clause of the First Amendment. *Jimmy Swaggart Ministries v. Board of Equalization,* 493 U.S. 378, 110 S.Ct. 688, 107 L.Ed.2d 796 (1990). Thus, the general rule applies, and the prison regulation can withstand an Equal Protection challenge if the distinction it draws between civic and religious civic groups is rationally related to a legitimate state interest. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985).

The record before me at this juncture does not enable me to resolve this issue. The defendants contend that safety considerations justify the distinction between civic and religious organizations. Their reasoning is unpersuasive, however. Both genres of groups can incite powerful passions among their constituents. One prisoner may feel

motivated by God to join a religious group, while another may simply have a strong interest in a particular issue and thus join a civic group. The simple incentives to join one group or another, however, do not establish that one is fundamentally more dangerous than the other. The plaintiffs have presented a colorable claim under the Fourteenth Amendment, and the defendants' motion to dismiss this claim must therefore be denied.

## II. Motion for a Preliminary Injunction

Federal Rule of Civil Procedure 65(a) authorizes a preliminary injunction when (1) there is a strong likelihood of success on the merits, (2) the plaintiffs would suffer irreparable injury in the absence of injunctive relief, (3) the defendants would not be harmed by a preliminary injunction, and (4) the public interest does not weigh against an injunction. *See, e.g., Clean Ocean Action v. York,* 57 F.3d 328, 331 (3d Cir.1995).

On the present record, it is impossible to determine whether a preliminary injunction should issue in this case. A pivotal issue is whether, as the plaintiffs contend, Islam requires that the Imam be chosen from within the congregation. The plaintiffs' motion for a preliminary injunction makes reference to "affidavits of AHMAD ABDUL JABBAR–AL SAMAD, et all attached hereto." These affidavits, however, were never filed with the court.

The only evidentiary material now available is a declaration of Father Francis T. Menei, a Roman Catholic Priest and the administrator of Religion and Family Services for the Department of Corrections. In paragraph 6, Father Menei states, "In a correctional setting, it is not repugnant to Islam that the outside religious coordinators be chosen by the administrators of the Department of Corrections." Because Father Menei does not explain why Islam in a correctional setting might differ from Islam in a free setting, an evidentiary hearing is necessary to resolve this threshold issue.

At the hearing, should the plaintiffs successfully show a likelihood of success, irreparable harm will automatically follow, since "[i]t is well-established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Hohe v. Casey,* 868 F.2d 69, 72 (3d Cir.1989) (quoting *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976)). An evidentiary hearing on the motion for a preliminary injunction should also include testimony relating to harm that the defendants may suffer should the injunction issue, and to the effect of an injunction on the public interest.

The plaintiffs' Complaint alleges violations of the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause. Because they have not pleaded violations of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb–1 (the "RFRA"), I have not considered its bearing on this case. Should they wish to do so, however, they may amend their Complaint and present testimony regarding the RFRA at the hearing on the preliminary injunction.

The prison rule that is the subject of this litigation does not take full effect until January 1, 1996. Thus, an order temporarily restraining its enforcement is premature at this time.