**PENNSYLVANIA SOCIAL SERVICES UNION, LOCAL 668, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO, by and through its Trustee Ad Litem, David BAKER, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, OFFICE OF INSPECTOR GENERAL, and the State Civil Service Commission, Respondents.**

Commonwealth Court of Pennsylvania.

Argued May 8, 1997.

Decided Aug. 14, 1997.

---

Bruce M. Ludwig, Philadelphia, for petitioner, PSSU.

Anthony S. Potter, Assistant General Counsel, Harrisburg, for respondents, Dept. of Public Welfare and Office of Inspector General.

Frederick C. Smith, Jr., Harrisburg, for respondent, State Civil Service Commission.

Before COLINS, President Judge, FRIEDMAN, J., and LORD, Senior Judge.

FRIEDMAN, Judge.

Before this court are preliminary objections to the Amended Petition for Review filed by the Pennsylvania Social Services Union (Union), wherein the Union seeks declaratory, mandamus and injunctive relief against the Pennsylvania Department of Public Welfare (DPW), the Office of the Inspector General (OIG) and the State Civil Service Commission (Commission) (collectively, Respondents) in connection with the transfer of welfare fraud control responsibility from DPW to the OIG and the resulting loss of civil service classification for the transferred positions.

In July 1994, the Casey administration transferred responsibility for welfare fraud investigation and control from DPW, the state agency charged with administration of the federally-funded Aid to Families with Dependent Children (AFDC), Medicaid and Food Stamp programs, to the OIG. Consequently, at the same time, many of the claims investigation agents and claims investigation agent supervisors of DPW's Office of Fraud and Abuse Investigation and Recovery who were responsible for handling welfare fraud investigations for these federal programs were transferred to the OIG. Prior to the transfer, all claims investigation agents and supervisors held classified service positions.[1] Although OIG employees are not within the classified service, the OIG determined that all transferred claims investigation employees would retain civil service status. However, new hirees for claims investigation positions (new positions created within the OIG and transferred positions vacated after the transfer) would not receive classified status; the status of transferred employees who received promotions would be determined by the status of the new or vacant position.

The Union objected to the OIG's determination that new or prospective hirees would not be accorded civil service status. By letter dated July 22, 1994, the Union asserted to the Commission that all claims investigation positions should carry the same classified status and asked the Commission to investigate and take appropriate action. By letter dated January 11, 1995, the Commission responded, advising the Union that nothing in the Civil Service Act (Act), 71 P.S. §§ 741.1—741.1005, requires that OIG employees be included within the classified service.

The Union filed the present action on February 15, 1995 in both our original and appellate jurisdiction. However, by order dated October 17, 1996, this court dismissed with prejudice those claims brought by the Union under our appellate jurisdiction, including the Union's appeal from the Commission's January 11, 1995 letter. We also dismissed the Union's claims brought under our original jurisdiction, but granted the Union leave to amend its petition. Accordingly, the Union filed an Amended Petition for Review addressed only to this court's original jurisdiction, in response to which Respondents have filed preliminary objections.[2]

---

1. All DPW positions are within the classified service as provided in section 3(d)(1) of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. § 741.3(d)(1).

2. DPW and the OIG have jointly filed five preliminary objections, one to standing and one to each of the four counts of the Union's Amended Petition; the Commission, filing separately, has objected only to Count IV.

Because standing is an essential element of justiciability, we will first address DPW and the OIG's objection that the Union's Amended Petition must be dismissed in its entirety because the Union lacks standing to bring this suit on its own behalf or on behalf of its members.

 It is well settled that an association, as a representative of its members, may have standing to bring a cause of action even in the absence of injury to itself. *Pennsylvania Gamefowl Breeders Association v. Commonwealth,* 533 A.2d 838 (Pa.Cmwlth.1987), *reaff'd after reconsideration,* 538 A.2d 645 (Pa.Cmwlth.1988). In order to have standing, the association must allege that at least one of its members is suffering immediate or threatened injury as a result of the challenged action. *Id.* Moreover, the member of that association who is threatened with injury must have an interest in the litigation that is substantial, direct and immediate. *Pennsylvania Academy of Chiropractic Physicians v. Department of State, Bureau of Professional & Occupational Affairs,* 129 Pa. Cmwlth. 12, 564 A.2d 551 (1989). As explained by the Pennsylvania Supreme Court in *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975), an interest is "substantial" when there is a discernable adverse effect to an interest of the aggrieved individual which differs from the abstract interest of the general citizenry in having others comply with the law. An interest is "direct" when an aggrieved person can show a causal connection between the alleged harm to his or her interest and the matter of which he or she complains. *Id.* Finally, the interest is "immediate" when the causal connection between the injury and the matter complained of is not too remote. *Id.*

Here, in its Amended Petition, the Union alleges that its members, claims investigation agents and supervisors, are threatened with injury by the OIG's determination that new or prospective hirees for claims investigation positions would not receive classified status. Specifically, the Union alleges that the OIG's actions adversely affect its members in the following manner: (1) claims investigation agents and supervisors who had retained their civil service status when transferred from DPW will lose the protection of the Act if they are promoted or transferred to non-civil service vacancies within the OIG; and (2) claims investigation agents and supervisors hired by the OIG after July 1, 1994 are denied classified service status, thereby losing the "valuable rights and protections" provided by the Act. (Amended Petition for Review at 10–11.)

 As individuals whose employment rights and benefits are adversely affected by the OIG determination, claims investigation agents and supervisors who belong to the Union have a substantial interest that clearly differs from the population at large. Moreover, the substantial interest of those individuals in preventing denial of their rights under the Act is direct because it is causally connected to the alleged adverse effect that Respondents' actions will have on the employment interests and security of the Union's members. Because this causal connection is not too remote, the Union's interest in preserving the civil service status of its members is also "immediate" for purposes of standing. Accordingly, we deny DPW and the OIG's preliminary objection with respect to the Union's standing to maintain the current cause of action on behalf of its members.

We will next address Respondents' preliminary objections to each of the four counts of the Union's Amended Petition for Review.[3]

## COUNT I

In Count I of its Amended Petition, the Union alleges that the Commonwealth of Pennsylvania, as a condition of participation in the AFDC, Medicaid and Food Stamp

3. DPW and the OIG's preliminary objections to Counts I and II of the Union's Amended Petition are in the nature of a demurrer. In such a case, our scope of review is limited to a determination of whether, on the facts alleged, the law states with certainty that no recovery is possible. *Hawks by Hawks v. Livermore,* 157 Pa.Cmwlth. 243, 629 A.2d 270 (1993). We must accept as true all well pled allegations and material facts averred in the complaint, as well as inferences reasonably deducible therefrom, and any doubt should be resolved in favor of overruling the demurrer. *Id.*

programs, must establish a plan to administer these programs which includes "the establishment and maintenance of personnel standards on a merit basis." (Amended Petition for Review at 15 (citing 42 U.S.C. § 602(a)(5); 42 U.S.C. § 1396a(a)(4); 7 U.S.C. § 2020(e)(6)(B); 42 U.S.C. § 4701; 5 C.F.R. § 900.601).) Because claims investigation agent and supervisory positions are funded by these federal programs, the Union maintains that all such positions, whether located within DPW or the OIG, must be covered by a merit system such as the classified service. Thus, the Union avers that, by failing to include certain claims investigation agent and supervisory positions within the classified service, DPW and the OIG have violated federal law.

In response, DPW and the OIG contend that Count I of the Union's Amended Petition fails to state a claim upon which relief may be granted because the federal statutes which Respondents are alleged to have violated do not create a private right of action.[4] We agree.

Initially, we note that, in its Amended Petition, the Union has failed to plead any legal basis which would support its right to bring a private cause of action against Respondents for failure to maintain a merit system of personnel administration.[5] However, despite its deficiencies, we will address the allegations of Count I in the interest of judicial economy.

Under sections 206 and 208 of the Intergovernmental Personnel Act of 1970, 42 U.S.C. §§ 4726 and 4728, the Office of Personnel Management (OPM) has the sole authority to prescribe standards for, and enforce violations of, all federally-required merit personnel systems, including those mandated by the Medicaid, AFDC and Food Stamp programs. Pursuant to this grant of authority, OPM has adopted section 900.604(b)(2) of Title 5 of the Code of Federal Regulations, which provides that "[t]he Intergovernmental Personnel Act does not authorize OPM to exercise any authority, direction or control over the selection, assignment, advancement, retention, compensation, or other personnel action with respect to any individual State or local employee." 5 C.F.R. § 900.604(b)(2). A recent federal regulation explains that, under section 900.604(b)(2), OPM has no independent authority to adjudicate individual complaints, see 62 Fed.Reg. 33971 (1997); OPM will accept allegations of state or local government non-compliance with merit systems standards only from federal grantor agencies.

■ Thus, assuming *arguendo* that all claims investigation agent and supervisory positions, whether located within DPW or the OIG, must be covered by a merit system such as the classified service, and that, by failing to include certain claims investigation agent and supervisory positions within the classified service, DPW and the OIG have violated federal law, the only method of redress available to the Union would be to file a complaint with the federal grantor agencies responsible for administering the funds for the AFDC, Medicaid and Food Stamp programs. The Union has no private cause of action under federal law to enforce the merit system provisions of the relevant federal statutes. Thus, we grant DPW and the OIG's preliminary objection with respect to Count I.

## COUNT II

In Count II of its Amended Petition, the Union avers that, by including some claims investigation agents and supervisors within the classified service while excluding others from the benefits and protections of the Act, DPW and the OIG have treated similar groups of employees differently, thereby vio-

4. In the alternative, DPW and the OIG argue that, even if a private right of action exists, Respondents have not violated the statutory provisions in question. Because we agree that the federal statutes governing the AFDC, Medicaid and Food Stamp programs create no private right of action enforceable by the Union in this court, we need not address DPW and the OIG's alternative argument.

5. Although the Union alleges that Respondents have violated the relevant federal statutes, nowhere does the Union allege that those statutes provide the Union with a private right to redress such a violation.

lating the due process and equal protection clauses of the Pennsylvania and United States Constitutions.

In response, DPW and the OIG contend that, because the Union has failed to allege any facts which would support its contention that the Union or its members have been deprived of any liberty or property interest, or that DPW and the OIG have treated similarly situated individuals differently, Count II of the Union's Amended Petition fails to state a claim for violation of the due process or equal protection clauses of the state or federal constitutions. We agree with DPW and the OIG in part.[6]

## A. Due Process Violations

■ The requirements of procedural and substantive due process apply to the deprivation of a property or liberty interest. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Sweeney v. Tucker,* 473 Pa. 493, 375 A.2d 698 (1977); *Stone and Edwards Insurance Agency v. Department of Insurance,* 161 Pa.Cmwlth. 177, 636 A.2d 293 (1994). In order to have a property interest, a litigant must have an enforceable expectation created either by statute or contract. *Insurance Federation of Pennsylvania, Inc. v. Foster,* 138 Pa.Cmwlth. 229, 587 A.2d 865, *appeal denied,* 529 Pa. 637, 600 A.2d 956 (1991). Upon review of the facts as alleged in the Union's Amended Petition, we cannot agree that the Union's members have been deprived of a property interest by the transfer

of welfare fraud control responsibility from DPW to the OIG.

Prior to the transfer, as noted, all claims investigation employees within DPW held statutorily-designated classified service positions. Therefore, after the transfer, those individuals had an enforceable expectation that they would retain civil service status in their new positions within the OIG; any violation of that expectation would have deprived those individuals of a property interest.[7]

However, new or prospective employees employed *after* the transfer for claims investigation positions within the *OIG* are not hired pursuant to the Act, unlike those employees who had been hired within *DPW,* and, thus, do not hold statutorily or contractually-designated classified service positions. Therefore, such employees have no similar enforceable expectation that they will receive classified status; absent a claim of legitimate entitlement to civil service protections, employees hired after the transfer cannot be deprived of a property interest in those protections.

## B. Equal Protection Violations

■ For similar reasons, DPW and the OIG have not violated the equal protection rights of the Union's members. The essence of the equal protection clauses of the United States and Pennsylvania Constitutions is the requirement that similarly situated persons be treated alike.[8] *See DeWees v. Stevenson,* 779 F.Supp. 25 (E.D.Pa.1991); *Bell Atlantic*

---

**6.** We agree with DPW and the OIG that the Union has failed to state a due process or equal protection claim with respect to: (1) transferred DPW claims investigation agents and supervisors who remain in their transferred position; and (2) newly-hired OIG claims investigation agents and supervisors. *See infra.* pp. 812–813.

However, we must disagree with DPW and the OIG that the Union has failed to state a due process or equal protection claim with respect to transferred DPW claims investigation agents and supervisors who have been, or subsequently will be, promoted or transferred within the OIG to a non-civil service vacancy. Accepting as true all well pled allegations and material facts of the Union's Amended Petition, we cannot say with certainty that no recovery is possible here were a claims investigation agent or supervisor to lose his or her classified service status due to a trans-

fer or promotion. Accordingly, we must deny DPW and the OIG's preliminary objection with respect to this particular group of employees.

**7.** There is no question here, however, that all former DPW claims investigation employees who were transferred to the OIG and remained in their transferred position retained civil service status.

**8.** The same standards and analysis employed in cases arising under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution apply equally in cases arising under the equal protection provisions of the Pennsylvania Constitution. *Dansby v. Thomas Jefferson University Hospital,* 424 Pa.Super. 549, 623 A.2d 816 (1993), *appeal denied,* 539 Pa. 650, 651 A.2d 538 (1994).

*Mobile Systems, Inc. v. Zoning Hearing Board of Township of O'Hara,* 676 A.2d 1255 (Pa.Cmwlth.1996), *appeal granted in part,* 547 Pa. 458, 691 A.2d 458 (1997). For the purpose of equal protection analysis, there are two distinct groups involved here: transferred DPW claims investigation agents and supervisors who remained in their transferred positions (civil service employees) and newly-hired OIG claims investigation agents and supervisors (non-civil service employees). Although "similarly situated" does not require that the complaining parties be identically situated, *see Abdul Jabbar-Al Samad v. Horn,* 913 F.Supp. 373 (E.D.Pa.1995), we believe that these two groups are sufficiently different to preclude an equal protection challenge.[9]

At the time the transferred DPW claims investigation agents and supervisors were hired, they were guaranteed, as a condition of employment, all the protections and privileges afforded by the Act. On the other hand, at the time the OIG claims investigation agents and supervisors were hired, they were guaranteed only the protections and privileges afforded by the merit selection procedures established by the Office of Administration. Based on this distinction, each group rightfully would have different expectations as to the respective terms of its employment. It follows that, if those expectations were violated, each group would have a different claim for relief. *Within* each group, a violation might give rise to an equal protection claim;[10] however, *between* the two

groups, there is no similarity of rights which would give rise to a valid equal protection claim. For the foregoing reasons, we grant in part and deny in part DPW and the OIG's preliminary objection to Count II of the Union's Amended Petition.

## COUNT III

In Count III of its Amended Petition, the Union alleges that, under the Act, all positions which are both (1) contained within an agency under the Governor's jurisdiction and (2) required by federal law to be under a merit system must be included within the classified service. Because claims investigation agent and supervisory positions fulfill both of the foregoing conditions, the Union argues that all such positions must be included within the merit system established by the Act.[11]

Where an administrative remedy is statutorily prescribed, the general rule is that a court is without original jurisdiction to entertain the action. *Veerasingham v. Sharp,* 61 Pa.Cmwlth. 460, 434 A.2d 221 (1981). Furthermore, this court has held that, under the doctrine of exhaustion of administrative remedies, one must exhaust all available administrative remedies before there arises a right to judicial review. *Id.* Here, DPW and the OIG contend that, because the Union has failed to exhaust its administrative remedies under the Act, this court lacks original jurisdiction over Count

---

9. Merely because transferred DPW claims investigation agents and supervisors and newly-hired OIG claims investigation agents and supervisors perform the same job functions does not mean that these two groups are similarly situated for equal protection purposes.

10. For example, if some of the transferred DPW agents had retained, and others had lost, their civil service status, the Union might have validly claimed that certain of its members were arbitrarily deprived of their equal protection rights. Similarly, if some of the new OIG agents had been granted, and others had been denied, rights under the Office of Administration personnel rules, the Union, again, might have validly claimed that its members were arbitrarily deprived of their equal protection rights. However, as noted previously, all transferred DPW employees who remained, after the transfer, in their

transferred positions, retained their civil service status, and all newly-hired OIG employees were granted rights under the Office of Administration rules.

11. At first glance, the allegations of Count III may appear to be identical to those of Count I. However, Count I alleges a violation of federal law, while Count III alleges a violation of state law, specifically, section 3(d)(13)(i) of the Act, which provides that the "classified service" includes:

All positions now existing or hereafter created in any department or agency under the Governor's jurisdiction which (i) are required to be under a merit system in order to qualify the agency or department for the receipt of funds from the United States Government, or any agency or instrumentality thereof. . . .

71 P.S. § 741.3(d)(13)(i).

III of the Union's Amended Petition. We must disagree.

 It is axiomatic that, where an administrative remedy fails to provide adequate relief, the party seeking relief need not pursue such a remedy. The Act, which is designed to promote greater efficiency and economy in the administration of government, provides certain benefits and protections to any "person legally occupying a position in the classified service." Section 3(j) of the Act, 71 P.S. § 741.3(j). Here, the claims investigation agents and supervisors seeking relief have either been denied classified service status or have had such status taken away. Thus, they have no right to avail themselves of the protections of the Act; indeed, it is exactly these protections which they seek to achieve through the current action. Because the Act fails to provide the Union with adequate relief, we believe that this court may exercise original jurisdiction over Count III of the Union's Amended Petition. Accordingly, we deny DPW and the OIG's preliminary objection to that count.

### COUNT IV

In Count IV of its Amended Petition, the Union contends that the Commission's determination, set forth in its letter dated January 11, 1995, that new or vacated claims investigation agent and supervisory positions are not covered by the Act, is erroneous as a matter of state and federal law.

In response, DPW and the OIG maintain that Count IV of the Union's Amended Petition must be dismissed because it again seeks to appeal the decision of the Commission, a claim which this court previously dismissed with prejudice. The Commission agrees, asserting that the Union has failed to state a claim against the Commission because the Commission's only alleged involvement was to respond to an inquiry by the Union with a letter that was neither an adjudication nor a final determination of the dispute between the Union and Respondents.

We agree with Respondents that Count IV must be dismissed because the Union, in that count, again seeks appellate review of the Commission's letter in response to the Un-ion's letter of "complaint," a claim which this court previously dismissed with prejudice in its order of October 17, 1996.

Accordingly, we deny DPW and the OIG's preliminary objection to the Union's standing, sustain DPW and the OIG's preliminary objection to Count I, sustain in part and deny in part DPW and the OIG's preliminary objection to Count II, deny DPW and the OIG's preliminary objection to Count III and sustain Respondents' preliminary objections to Count IV of the Union's Amended Petition.

### ORDER

AND NOW, this 14th day of August, 1997, upon consideration of preliminary objections filed by the Pennsylvania Department of Public Welfare (DPW), the Office of the Inspector General (OIG) and the State Civil Service Commission (Commission) (collectively, Respondents), it is hereby ordered that:

(1) DPW and the OIG's preliminary objection to the Pennsylvania Social Services Union's (Union) standing is denied;

(2) DPW and the OIG's preliminary objection to Count I of the Union's Amended Petition is sustained;

(3) DPW and the OIG's preliminary objection to Count II of the Union's Amended Petition is sustained in part and denied in part as follows:

> (a) sustained with respect to (i) transferred DPW claims investigation agents and supervisors who remain in their transferred position and (ii) newly-hired OIG claims investigation agents and supervisors; and

> (b) denied with respect to transferred DPW claims investigation agents and supervisors who have been, or subsequently will be, promoted or transferred within the OIG to a non-civil service vacancy;

(4) DPW and the OIG's preliminary objection to Count III of the Union's Amended Petition is denied; and

(5) Respondents' preliminary objections to Count IV of the Union's Amended Petition are sustained.

Respondents are ordered to file an answer to the Amended Petition for Review within 30 days.