Woolworth Company *v.* Pittsburgh.
Woolworth Company *v.* Pittsburgh.
Appeal of the School District of Pittsburgh.
Woolworth Company *v.* Pittsburgh.
Appeal of the County of Allegheny.

Argued May 4, 1971, before President Judge BOW-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER and ROGERS.

*Grace S. Harris,* Assistant City Solicitor, with her *Ralph Lynch, Jr.,* City Solicitor, for appellant, City of Pittsburgh.

*Bernard Markowitz,* Assistant Solicitor, with him *Justin M. Johnson,* Solicitor, for appellant, School District of Pittsburgh.

*T. Robert Brennan,* with him *Harvey E. Robbins* and *Brennan and Brennan,* for appellees.

No appearance for appellant, County of Allegheny.

OPINION BY PRESIDENT JUDGE BOWMAN, July 8, 1971:

As an amendment to Section 17 of the Act of June 21, 1939, P. L. 626, relating to assessment of property for tax purposes in second class counties, the General Assembly enacted the Act of June 22, 1970, P. L. (Act No. 138), 72 P.S. 5452.17, which in full text reads: "No appeal taken from any assessment made under this act shall affect the validity of any taxes assessed, nor shall it prevent the collection of the taxes based upon the assessment, if such assessment shall thereafter be reduced, an exoneration shall be granted for the proper amount to equalize such reduction, if the taxes based upon such assessment have not been paid, and if the taxes based upon such assessment have been paid the excess taxes collected shall be refunded to the person having made such payment. Such refunds shall be made within thirty (30) days after the tax levying authorities have been notified by mail of the reduction

made in the assessment by the board or by the court and such refunds shall include interest at the legal rate commencing one (1) year after the date of payment. No such appeal shall operate to relieve the appellant from liability for accrued interest and penalties on any unpaid taxes based upon the assessment as finally established."

Section 2 of the amending act declares that it shall take effect immediately and "shall apply to all refunds made hereafter".

The substantive provisions of this amendment are not at issue. At issue is the applicability of the interest payment provision to assessment appeals in process upon the effective date of the amending act.

F. W. Woolworth Company (Woolworth) leased certain commercial property in the City of Pittsburgh and, as part of the lease arrangement, agreed to pay all properly assessed real estate taxes but reserving the right to contest any underlying assessment. Pursuant to the Act of 1939, *supra,* the County of Allegheny assessed the subject property for the triennial taxing period 1969-1970-1971 and Woolworth paid assessed taxes to the City of Pittsburgh based on these county assessment figures. Woolworth then appealed the underlying assessments to the Board of Property Assessment, Appeals, and Review of Allegheny County which affirmed the assessments.

An appeal was taken to the Court of Common Pleas of Allegheny County which reduced the assessments and required an adjustment in the resulting property taxes. It became the duty of the City of Pittsburgh, under the provisions of the Act of 1939, *supra,* to refund the excess taxes collected according to the statutory refund procedure.

Under this procedure, the taxing authority was required to make refund within thirty days of notice that

the assessment had been reduced. There was no statutory provision for the payment of interest on such excess taxes collected and refunded until the adoption of Act No. 138.

Following the lower court's reduction of the assessments and notification of the court's order, the City of Pittsburgh refunded to Woolworth the amount of excess taxes for 1969 and 1970 within the required thirty days. As to the payment of interest, the City construed Act No. 138 to apply only to the period from the effective date of the enactment, June 22, 1970, to the mailing of the interest check and not to apply to the period during which the excess taxes were held prior to June 22, 1970.

As to the 1970 taxes, Woolworth does not disagree with the City's construction because the act is specific in directing that interest shall be paid on such refunds ". . . commencing one (1) year after the date of payment". Clearly one year could not have elapsed as to the 1970 payment during the year in which payment was made. However, Woolworth does contend that as to the 1969 payment, interest should be calculated from one year after the date of payment, rather than from June 22, 1970. The City mailed Woolworth two interest checks totalling $45.59 for the period June 22, 1970 to October 5, 1970, the date of mailing; Woolworth argues that it is entitled to $103.95 instead.

The parties presented a question to the lower court upon a stated case, the facts of which have been set forth above. The question reads: "Under Act No. 138 of 1970, is the City of Pittsburgh correct in calculating the statutory interest prospectively from the date of the passage of the Act so that interest on refunds made subsequent to the effective date of the Act accrues from June 22, 1970, the date of the Statute's enactment, or

one year from the date of payment, which ever is later?"

The lower court answered the question in the negative and according to the stipulation of the parties entered judgment in favor of Woolworth in the amount of $103.95. The City of Pittsburgh had reserved its right of appeal and timely filed such an appeal in this Court.

The narrow question thus presented is whether the lower court correctly interpreted the interest provisions of Act No. 138 to require the City of Pittsburgh to pay interest at the legal rate on excess taxes collected before June 22, 1970 and refunded thereafter.

We conclude that the City has the same duty as to all refunds made after June 22, 1970 regardless of when the taxes were originally paid. We agree with the able opinion of Judge SILVESTRI, writing for the lower court, that from the language employed it was both the clear intention of the Legislature to have such interest apply for the full period of withholding (less one year) and that such unambiguous language overcomes the strong presumption against retroactivity.

It has long been the case law of Pennsylvania that the intent of the Legislature should be gathered from the language of the statute alone where such language is clear and unambiguous. "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."[1]

The words of Act No. 138 are clear and we cannot agree with the City that the provision for accrual ". . . one year after the date of payment" is to have prospective application only or that the words ". . . shall apply to all refunds made hereafter" somehow limit the

---

[1] Statutory Construction Act of May 28, 1937, P. L. 1019, Art. IV, §51, 46 P.S. §551; see Source Notes by Draftsmen.

calculation of interest to the period after the effective date of the act. Judge SILVESTRI has refuted such argument with precision: "The legislature was aware of the fact that taxes on appeal from assessments were paid by the taxpayer, this is obvious, not only as a matter of common knowledge but also from the fact they incorporated this knowledge in the language of the Act where it is set forth '. . ., and if the taxes based upon such assessment have been paid the excess taxes collected shall be refunded to the person having made such payment'. Recognizing this state of affairs the legislature proceeded to state '. . . and such refunds shall include interest at the legal rate commencing one (1) year after the date of the payment'. If the legislature had intended to limit interest on refunds to commence after the effective date of the Act it could have accomplished this in one of several ways, i.e., it could have stated '. . . and such refunds shall include interest at the legal rate.' saying no more, and leaving it to Section 2 of the Act to limit interest to the effective date; or it could have stated, '. . . commencing as hereafter provided in Section 2 hereof'; or '. . . and such refunds shall include interest at the legal rate but not on excess taxes heretofore paid'. However, the legislature did choose to use the phrase '. . . commencing one (1) year after the date of the payment' immediately following the provision directing payment of interest on refunds. We cannot ignore or strike out this language. The words are clear, unequivocal and unambiguous. They mean exactly what they say, namely, that interest is to be paid on refunds on excess taxes paid beginning one year after the date of the payment of the same. The language in Section 2 of the Act, 'This Act shall take effect immediately . . . and shall apply to all refunds made hereafter' buttresses this conclusion by saying that interest is to be paid henceforth, but only on refunds

made in the future thus precluding any claim for interest on refunds made prior to the effective date of the Act.

"The interest provision also provides a simple, codified method for the determination of interest, a mechanical procedure which could be applied in all cases. It provides for the taxing authority a means by which it can more precisely plan its budget while at the same time providing an impetus for local assessment boards and taxing authorities to clear up their assessment appeals backlog. The situation which existed prior to the Act where no interest was paid until after a final determination actually made it profitable for a local taxing authority to delay assessment appeals because it gave them the use of the appellant's money, not an insignificant consideration in light of today's high interest rates. If we were to read this language as applying only to payments made after the effective date or for the calculation of interest from the effective date of the Act, we would completely foil the legislative intent of giving relief to those taxpayers whose appeals have been delayed for the longest time."

The function of the court is to read the statutory language as the Legislature intends it to be read. It is only when the Legislature has not clearly expressed its intent that the courts resort to the tenets of statutory construction. "[R]ules of statutory construction are to be resorted to only where there *is* such ambiguity; they are not to be used to create doubt but only to remove it." *Kritz Estate*, 387 Pa. 223, 227, 127 A. 2d 720, 723 (1956). [Emphasis in Original]

A purpose of the Legislature in enacting Act No. 138 was to prod taxing bodies into quicker resolution of disputed property assessments by requiring them to pay interest on *all* refunds required to be paid after the effective date of the act irrespective of when the con-

tested taxes were paid. To excuse the taxing body from paying interest on the stalest disputes would result in the anomalous situation of settling newer disputes first since interest would apply only to the period after June 22, 1970.

That such an intent results in retroactive application of the statute does not render the statute invalid. "No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature." Statutory Construction Act of Act of May 28, 1937, P. L. 1019, Art. IV, §56, 46 P.S. §556. Where the retroactivity is clearly expressed the statute is effective unless it contravenes some constitutional principle. Here, Act No. 138 runs afoul of no constitutional prohibition but merely expands an existing remedy. Such legislation is simply curative and remedial in that it makes more nearly perfect and substantial an existing right. "Hence, remedial statutes, or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, do not come within the legal conception of a retrospective law, or the general rule against the retrospective operation of statutes." 50 Am. Jur. §482.

This intent of the Legislature is abundant for as Judge SILVESTRI has pointed out: "There is no qualification on 'the date of payment' expressed in the Act. As stated hereinabove, the legislature was certainly aware that there would be dates of payment which were made prior to the effective date of the Act even if it was not aware of the number and dates of such payments and if it had not wanted the interest to relate back to this prior period, it could have used another time for reference. The legislature could not have been more clear in its manifestation as to when the interest period was to be calculated."

"An Act of Assembly may create civil rights and impose duties *retroactively* if that legislative intent is clearly expressed in the act, as it is here." *Longacre Park Heating Co. v. Delaware County (et al., Appellant),* 160 Pa. Super. 252, 256, 50 A. 2d 706, 708 (1947). [Emphasis in Original]

We specifically reject the City's contention that the logic of the California case, *Gregory v. State,* 32 Cal. 2d 700, 197 P. 2d 728, 4 A.L.R. 2d 924 (1948) has any relevance or persuasiveness with respect to the case before us. The issue in that case concerned the duty of the state to pay interest on a gift tax overpayment from the effective date of a statute providing such interest for the first time. The issue was simply whether the state had *any* duty to pay interest on an overpayment made before the effective date of the act but for which refund was made after such date. The California court ruled that there was a duty to pay interest but only from the effective date of the act and did not even consider the question of interest calculated from before the effective date of the act. Because of this crucial difference in the issues, we find the reasoning in *Gregory* inapplicable. The retroactive validity of Act No. 138 rests solely on the expressed intent of the Legislature and on the nature of the legislation, not on considerations of the constitutional limitations on the use of public funds as discussed in the California case.

As is so frequently done in cases where the Legislature has saddled municipal government with unwanted and unanticipated additional financial burdens, the City stresses the financial problems which will confront it as a result of an adverse ruling. With reference to another taxing statute and its collateral effects on the public treasury, our Supreme Court has said: "Finally, the Commonwealth gives voice to dire prophecies of the practical difficulties and confusion that may possibly

result if deductions were allowed from non-probate property not subject to the payment of the decedent's debts, in which event the beneficiaries of testamentary estates whose shares were liable for the payment of the debts might have to share tax deductions with those acquiring non-probate property which was not liable for the debts. However, this argument, whatever its merit, must be addressed to the legislature, not to the courts." *Kritz Estate, supra*, 387 Pa. at 230, 127 A. 2d at 724.

For the above reasons, we affirm the decree of the lower court.