Lori Newhart COSTELLO & Joseph
Costello (Dec'd), Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (KINSLEY CON-
STRUCTION, INC.), Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 2006.
Decided Feb. 13, 2007.

Matthew L. Wilson, Philadelphia, for pe-
titioner.

R. Burke McLemore, Jr., Harrisburg,
for respondent.

BEFORE: SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

Lori Newhart Costello (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that reversed the decision of a Workers' Compensation Judge (WCJ) to the extent that the WCJ determined that Claimant had established a valid common law marriage with Joseph Costello (Decedent) as of November 26, 2003 and that she therefore was entitled to a widow's death benefits under a fatal claim petition. Claimant questions whether the WCJ correctly concluded that the doctrine of common law marriage was not abolished in *PNC Bank Corp. v. Workers' Compensation Appeal Board (Stamos)*, 831 A.2d 1269 (Pa. Cmwlth.2003); whether the WCJ correctly concluded that the legislature superseded the decision in *PNC Bank Corp.* by amending Section 1103 of the Marriage Law, 23 Pa.C.S. § 1103; and whether it would be inequitable to apply the holding of *PNC Bank Corp.* in view of the reliance of Lori and Joseph Costello on the viability of the doctrine of common law marriage.

I

Decedent died June 28, 2004 from a crush injury that he sustained in the course of his employment with Kinsley Construction, Inc. (Employer). Claimant filed a fatal claim petition on August 31, 2004 alleging that she was Decedent's widow by a common law marriage with a date of November 26, 2003 and stating: "Decedent and Petitioner entered into a notarized confirmation of common law marriage indicating intent to have a marital relationship pursuant to the laws of the Commonwealth of Pennsylvania." Fatal Claim Petition, p. 2; Reproduced Record (R.R.) 4a. Their son, Tanner Joseph Costello, was born January 14, 2002, and he and Claimant were indicated as Decedent's dependents. Employer filed an answer asserting that common law marriage does not exist for the purpose of workers' compensation claims in Pennsylvania. The matter was heard by a WCJ, and Claimant was the sole witness to testify. Various documents were offered by both sides and entered into the record.

Claimant testified that she and Decedent met in 1997 and that they began living together in 1998. They resided in a house with a mortgage in Claimant's name only, but Decedent paid the monthly expenses. In 1998 Decedent asked Claimant to marry him and gave her a ring. Because they did not have insurance, they shared the cost of Tanner's birth and subsequent medical treatment. Claimant had a credit card account in her name, although one card had Decedent's name on it and he used it; they had a joint checking account and a joint cell phone account, although account names were not established. Both of their cars were titled in the name of Decedent's parents, who carried the insurance on the vehicles. Decedent's obituary stated that he "was the husband of Lori (Newhart) Costello. They were married November 27, 2003." Employer's Ex. 02; R.R 12a.

On November 26, 2003, Claimant and Decedent had notarized a document entitled "Confirmation of Common Law Marriage" (Confirmation).[1] After execution of

---

1. The Confirmation stated in part:
 We, the undersigned, do affirm that our relationship is intended to comply with Pennsylvania Law creating a Common Law Marriage.

 It is our intent to have a marital relationship.
 We have co-habitated or will co-habitate as husband and wife and hold ourselves out to the community as married.

the document Claimant began using Costello as the last name for herself and her son, and the couple filed their 2003 tax return as married. In November 2003 Claimant became covered by Decedent's life insurance through Employer; his November 17, 2003 application form listed Lori L. Newhart as fiancée. Based on the evidence, the WCJ determined that Decedent and Claimant did not attempt to contract a common law marriage until November 26, 2003.

 The WCJ noted that on September 17, 2003, this Court ruled in an en banc decision in *PNC Bank Corp.* that the doctrine of common law marriage was abolished and that the decision would be applied prospectively to any common law marriages entered into after that date. The WCJ pointed out that the legislature by the Act of November 24, 2004, P.L. 954 (Act 144), amended Section 1103 of the Marriage Law to provide as follows: "No common-law marriage contracted after January 1, 2005, shall be valid. Nothing in this part shall be deemed or taken to render any common-law marriage otherwise lawful and contracted on or before January 1, 2005, invalid."[2] The WCJ referred to the burden on a widow petitioning for fatal claim benefits to prove the existence of a valid marriage existing at the time of the decedent's death.

Because he determined that the common law marriage did not occur until November 26, 2003, the WCJ concluded that the critical issue was whether *PNC Bank Corp.* precluded the establishment of a valid common law marriage after September 17,

2003. The WCJ stated that in 1998 the Pennsylvania Supreme Court expressly declined to abolish the doctrine of common law marriage in *Staudenmayer v. Staudenmayer*, 552 Pa. 253, 714 A.2d 1016 (1998), and he quoted a statement by the court in *Commonwealth v. Randolph*, 553 Pa. 224, 718 A.2d 1242 (1998), that a lower tribunal may not disregard the standards articulated by a higher court.

Although the decision in *PNC Bank Corp.* was not appealed, the WCJ concluded that it did not effectively change the law of the Commonwealth and that even if it did have the effect of abolishing common law marriage after September 17, 2003, the change was implicitly overruled when the legislature enacted Act 144 thereby rendering the Costellos' Confirmation valid. The WCJ determined that Claimant was entitled under clause 3 of Section 307 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 561, as a widow with one child to 60 percent of Decedent's average weekly wages of $728.39. (The payment ordered was 66 2/3 percent of wages rather than the correct 60 percent, which is $437.03.)

 Although the Board acknowledged that common law spouses are entitled to death benefits under the Act, *Brandywine Paperboard Mills v. Workers' Compensation Appeal Board (Zittle)*, 751 A.2d 1205 (Pa.Cmwlth.2000), and that the Supreme Court in *Staudenmayer* stated that common law marriages were still viable in Pennsylvania, the Board nevertheless concluded that the decision in *PNC Bank*

We are free of any impediment to marriage such as a marriage to another party and all prior marriages have ended in a decree of divorce.
Employee's Ex. 02; R.R. 9a.

**2.** In general, a common law marriage is created only by the exchange of words in the present tense (*verba in praesenti*) spoken with

the specific purpose of creating the legal relationship of husband and wife; if the parties are not available to testify, a rebuttable presumption in favor of common law marriage is allowed where there is sufficient proof of cohabitation and reputation of marriage in the community. *Staudenmayer v. Staudenmayer*, 552 Pa. 253, 714 A.2d 1016 (1998).

*Corp.* to abolish common law marriage prospectively meant that the Costellos' marriage agreement of November 26, 2003 was invalid.[3] Furthermore, the WCJ erred in deciding that the amendment to Section 1103 of the Marriage Law made valid any common law marriages deemed invalid under *PNC Bank Corp.* inasmuch as the amendment simply codified the holding of the case and left intact only those common law marriages "otherwise lawful" and contracted before January 1, 2005. The Board reversed the award to Claimant but allowed benefits on behalf of the minor son at the rate of 32 percent of Decedent's average weekly wage. *See* clause 1(a) of Section 307 of the Act.[4]

## II

On her petition for review, Claimant first argues that the Board erred in ruling that common law marriage was abolished as of September 17, 2003. She submits, respectfully, that the decision in *PNC Bank Corp.* was "inoperative" under the principle stated in Randolph and that the Supreme Court had recently declined to abolish common law marriage in *Staudenmayer*. In *Blue v. Blue*, 532 Pa. 521, 616 A.2d 628 (1992), the Supreme Court concluded that it was preferable to await legislative guidance in matters relating to di-

vorce and domestic relations rather than to create duties and obligations by judicial pronouncement. Also, in *Rossa v. Workers' Compensation Appeal Board (City of Philadelphia)*, 576 Pa. 349, 839 A.2d 256 (2003), the Supreme Court referred to a WCJ's authority to determine the existence of a common law marriage in death benefits cases.

■ Employer in response first reviews evidence supporting the WCJ's conclusion that there was not a common law marriage before November 26, 2003. Employer asserts that it is clear beyond cavil that *PNC Bank Corp.* was binding upon the WCJ and that the purported common law marriage in this case was void *ab initio*. It refers to *Rossa* for a contrary inference, namely, that if the Supreme Court disagreed with *PNC Bank Corp.* it could have addressed it at that time. The Court agrees in part with Employer on this narrow question. Under the very principle cited by the WCJ from Randolph, the WCJ was not free to disregard this Court's ruling in *PNC Bank Corp.* simply because he disagreed with it. Had there been no further developments, the WCJ's decision would have been erroneous.

Act 144, however, altered the landscape in this case. Claimant quotes the version

---

**3.** The Board noted that the Supreme Court had not yet had the opportunity to review *PNC Bank Corp.* It stated further that the Superior Court initially questioned the precedential value of the decision in *Bell v. Ferraro*, 849 A.2d 1233 (Pa.Super.2004) (stating that the Superior Court was not bound by the holding and that the Supreme Court in *Staudenmayer* and the Superior Court in *In Interest of Miller*, 301 Pa.Super. 511, 448 A.2d 25 (1982), had declined the invitation to abolish common law marriage, deferring such action to the legislature). The Superior Court later stated in *Stackhouse v. Stackhouse*, 862 A.2d 102 (Pa.Super.2004), that *PNC Bank Corp.* was binding on the trial courts. The Court observes that the purely prospective holding of *PNC Bank Corp.* was not applied to defeat

the claim of the petitioner in that case; therefore, he had no motive and arguably no standing to appeal. *See* Pa. R.A.P. 501: "[A]ny party who is aggrieved by an appealable order ... may appeal therefrom." This unusual circumstance in all likelihood explains the absence of any petition for allowance of appeal in *PNC Bank Corp.*

**4.** The Court's review is limited to determining whether there was a constitutional violation or an error of law, whether any practice or procedure of the agency was not followed and whether the findings of fact are supported by substantial evidence in the record. *Jeanes Hosp. v. Workers' Compensation Appeal Board (Hass)*, 582 Pa. 405, 872 A.2d 159 (2005).

of Section 1103 of the Marriage Law prior to amendment: "This part shall not be construed to change the existing law with regard to common-law marriage." The amended version, see p. 1244 above, specifies an exact date, January 1, 2005, after which a common law marriage may no longer be formed. Claimant submits that where language of a statutory amendment is clear and explicit such law supersedes inconsistent common law, and she cites *Sternlicht v. Sternlicht*, 583 Pa. 149, 876 A.2d 904 (2005) (holding that the plain meaning of part of a comprehensive legislative scheme addressing transfers to minors superseded common law requirement of proof of donative intent to make a transfer irrevocable). The legislature presumably was aware of *PNC Bank Corp.*, but it chose to defer abolition of common law marriage to a later time to provide sufficient notice of such a watershed change in the law.

Employer maintains that nothing in the amendment rendered valid those marriages that previously were declared to be invalid by *PNC Bank Corp.*, i.e., such marriages were void *ab initio*. It quotes the amendment, with added emphasis in the language of the second sentence: "Nothing in this part shall be deemed or taken to render any common-law marriage *otherwise lawful* and contracted on or before January 1, 2005, invalid." The effect of this language, Employer contends, was not to "revive" the alleged common law marriage of Claimant and Decedent because that marriage was not lawful when it occurred.

Employer quotes Section 1953 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1953, which provides that the original statute and the amendment shall be read together and viewed as one statute passed at one time, "but the portions of the statute which were not altered by the amendment shall be construed as effective from the time of their original enactment,

and the new provisions shall be construed as effective only from the date when the amendment became effective." Section 1926, 1 Pa.C.S. § 1926, provides that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." Employer cites *Cole v. Czegan*, 722 A.2d 686 (Pa.Super.1998), where the Superior Court noted the principle that amendatory statutes are not to be given retroactive effect unless such a construction is so clear as to preclude all question as to the intent of the legislature, especially where they interfere with existing contractual obligations or substantive rights, and it also cites *Insurance Fed'n of Pennsylvania, Inc. v. Foster*, 138 Pa.Cmwlth. 229, 587 A.2d 865 (1991), for a statement that the legislature has not adopted the interpretive principle of "negative implication," i.e., presuming that legislative intent does not encompass something not specifically stated in a statute.

Under Employer's interpretation, the first sentence of the amended version of Section 1103 of the Marriage Law makes common law marriages after January 1, 2005 certainly invalid, and the second sentence does not express the negative implication that all such marriages before that date are valid but only that nothing in that part shall render otherwise valid marriages invalid. Also, Act 144 has no clear statement of retroactive application. If it is deemed to have retroactive application, then the second sentence is superfluous because it would validate all common law marriages entered into prior to January 2, 2005.

In *Commonwealth v. Shaffer*, 557 Pa. 453, 734 A.2d 840 (1999), the Supreme Court had previously held that the act known as the Pennsylvania Corrupt Organizations Act, 18 Pa.C.S. § 911, *as amended*, applied only to legitimate enter-

prises, and the legislature amended the act to make it apply to illegitimate enterprises as well. The Supreme Court held that the legislature failed to indicate clearly that the amendment should be applied retroactively, and it stated further that although legislative history indicated that certain legislators desired to overrule the court's earlier decision, the legislature lacked the authority to do so. Employer argues that in *Shaffer* the law under the previous decision before amendment applied at the time of the alleged crime, and here the law under *PNC Bank Corp.* applied at the time of the alleged common law marriage. Therefore, Employer argues, that decision was not overruled by the legislature.

### III

■ The Court agrees that the issue presented in this case is primarily one of statutory interpretation. As is frequently stated, the object of all statutory construction is to ascertain and to give effect to the intent of the legislature. *See* Section 1921(a) of the Statutory Construction Act, 1 Pa.C.S. § 1921(a); *Sternlicht.* The Court points out that the original version of Section 1103 of the Marriage Law, stating that "[t]his part shall not be construed to change the existing law with respect to common-law marriage," was adopted as part of the consolidation or official codification transforming the unofficial Title 23 of the Pennsylvania Statutes into the official Title 23 of the Pennsylvania Consolidated Statutes, primarily in the Act of December 19, 1990, P.L. 1240. Thus, in the course of consolidation, the legislature specifically considered the matter and expressly declined at that time to make any change in existing law as to common law marriage. The legislature deleted this language when it decided to make a change, specifying

that no common law marriage contracted after January 1, 2005 would be valid but providing that nothing in "this part" shall render any common law marriage otherwise lawful and contracted before that date invalid.[5]

The legislature's authority to address the subject of common law marriage has never been questioned. *See In Interest of Miller,* 301 Pa.Super. 511, 448 A.2d 25 (1982). Claimant is correct that the legislature intended that all common law marriages after January 1, 2005 be invalid and that all such marriages before that date otherwise lawful should be deemed valid. Therefore, the Court considers questions of retroactive application of the Act 144 amendment to be unwarranted: the statute expressly addresses and provides for times in the past when common law marriages were contracted. *See F.W. Woolworth Co. v. City of Pittsburgh,* 2 Pa. Cmwlth. 338, 284 A.2d 143 (1971) (stating that where retroactivity is clearly expressed, the statute is effective unless it contravenes some constitutional principle).

Another principle of statutory interpretation that applies is that statutes are to be construed to give effect to all of their provisions, so that none are rendered mere surplusage. Section 1921(a) of the Statutory Construction Act. Employer appears to argue that if Section 1103 of the Marriage Law is interpreted as a blanket validation of common law marriages before January 1, 2005, then the qualifying phrase "otherwise lawful" will be rendered surplusage. The Court points out that Employer's interpretation, that all common law marriages became unlawful after September 17, 2003 and that the legislature intended no change, renders the entire Act mere surplusage. A more logical

---

**5.** Contrary to Employer's interpretation, "this part" in Section 1103 refers to the Marriage Law, Part II of the Domestic Relations Code,

23 Pa.C.S. §§ 1101–1905; it does not refer to "this Act." *See* 23 Pa.C.S. § 1101.

interpretation of Section 1103 is that the "common law marriage otherwise lawful" refers to any of various reasons that previously might have rendered such a marriage unlawful, such as a lack of a divorce from a previous marriage.

 As for the power of the legislature to enact the amendment to Section 1103 of the Marriage Law, the Court acknowledges that this case is distinct from *Shaffer* upon which Employer relies. For one thing, as noted above, the legislation did clearly and specifically address past periods. For another, a decision by this Court does not have precisely the same effect in regard to the legislature as a decision from the highest court of this Commonwealth.

A related principle is found in Section 1922(4) of the Statutory Construction Act, 1 Pa.C.S. § 1922(4), stating that "when a court of last resort" has construed the language used in a statute, the legislature in subsequent statutes on the same subject intends the same interpretation. The Court therefore holds that in enacting Act 144 the legislature intended to and did adopt legislation that rendered valid all "otherwise lawful" common law marriages entered into before January 1, 2005, thereby superseding the decision in *PNC Bank Corp.*[6]

Accordingly, the Court reverses the order of the Board because it committed an error of law.[7] Claimant is entitled to ben-

---

6. The concurring opinion argues that nothing in *PNC Bank Corp.* stated a date certain when common law marriage was abolished and that the legislature in Act 144 did not overrule that decision but rather supplied an effective date of January 1, 2005. As was explained in *PNC Bank Corp.*, the "purely prospective effect" that was adopted there means that a new rule of law is announced but that the Court does not apply it to the parties in the case but only to future cases. See *Blackwell v. State Ethics Commission*, 527 Pa. 172, 190–191, 589 A.2d 1094, 1103 (Zappala, J. concurring). Nevertheless, the new rule is announced and becomes effective when the decision is issued. See *Fiore v. White*, 562 Pa. 634, 643, 757 A.2d 842, 847 (2000) (stating that the Supreme Court announces a new rule of law when it "issues a ruling that overrules prior law, expresses a fundamental break from precedent, upon which litigants may have relied, or decides an issue of first impression not clearly foreshadowed by precedent"). As was stated in *PNC Bank Corp.*, 831 A.2d at 1282 (footnote omitted) (emphasis added): "Accordingly, *henceforth*, this court will recognize as valid only those Pennsylvania marriages entered into pursuant to the Marriage Law procedures." The "purely prospective effect" meant that the holding did not defeat the claim of the claimant in that case; it did not mean that some further step was necessary to implement or to give effect to the new rule.

 The dissenting opinion asserts that the majority's conclusion as to the intent of the legislature is contrary to the principle that statutes

are never presumed to make any innovation in existing common law (or statutory law) beyond that expressly declared in their provisions, citing *In re Holton's Estate*, 399 Pa. 241, 159 A.2d 883 (1960), and *Pennsylvania Bankers Ass'n v. Pennsylvania Department of Banking*, 893 A.2d 864 (Pa.Cmwlth.2006), among others. This principle is not applicable here. If the legislature accepted that *PNC Bank Corp.* irrevocably abolished common law marriage as of September 17, 2003, then the legislature's abolishing it again as of a later date would have been a wholly futile act. The legislature's taking up this subject, which it previously expressly declined to change, shortly after the decision in *PNC Bank Corp.* may not be attributed to coincidence. In addition, the decision was not one by the Supreme Court but rather by this Court, and the Superior Court expressly noted in Bell that *PNC Bank Corp.* was not binding on the Superior Court. In view of all of these circumstances, the situation was not one appropriate for a presumption against legislative intent to alter a settled rule of common law.

7. Claimant also states an argument that the evidence may be interpreted to establish a common law marriage before September 17, 2003. The Court sees no error in the WCJ's careful consideration of the evidence and determination that no common law marriage existed before November 26, 2003.

efits as a widow with one child in the amount of 60 percent of the average weekly wages of Decedent under clause 3 of Section 307 of the Act.

### ORDER

AND NOW, this 13th day of February, 2007, the order of the Workers' Compensation Appeal Board is reversed. Lori Newhart Costello is entitled to benefits as a widow with one child as indicated in the foregoing opinion.

Judges LEADBETTER and COHN JUBELIRER dissent.

CONCURRING OPINION BY Judge LEAVITT.

I agree with the majority that Act 144 established the definitive date for eliminating the opportunity for Pennsylvanians to enter into common law marriages. I write separately because I do not believe that Act 144 overruled this Court's holding in *PNC Bank Corp. v. Workers' Compensation Appeal Board (Stamos)*, 831 A.2d 1269 (Pa.Cmwlth.2003). Rather, I believe Act 144 implemented our holding in *PNC Bank Corp.*

The majority states that in abolishing common law marriage, this Court intended that the *PNC Bank Corp.* holding "would be applied prospectively to any common law marriages entered after that date," i.e., the date of the *PNC Bank Corp.* decision. Majority Opinion at 1244. However, a date certain for implementation of the *PNC Bank Corp.* holding does not appear anywhere in that decision.

We did say that the effect of the *PNC Bank Corp.* holding should be prospective. In the first paragraph of the decision, the following was said:

For the reasons that follow, we hold that the time has come to abolish the doctrine, [of common law marriage], but that this decision should be given purely prospective effect.

*PNC Bank Corp.*, 831 A.2d at 1272. We explained our reasons for making the abolition of common law marriage prospective as follows:

On balance, we believe these factors favor purely prospective application in this case ... Finally, *prospective application will give our Supreme Court an opportunity to review our holding, and minimize any disruption* that might result should we have somehow misunderstood that body's intention.

*Id.* at 1283 (emphasis added). Our order in *PNC Bank Corp.* did not provide a date of application; the order stated as follows:

AND NOW, this 17th day of September, 2003, the order of the Workers' Compensation Appeal Board in the above captioned matter is hereby AFFIRMED.

*Id.* at 1286. In sum, in not one of these critical statements does a specific date appear for the implementation of the *PNC Bank Corp.* holding.

We did not specify a date of implementation so that (1) the Supreme Court could review our decision and (2) the disruption caused by such a dramatic change in the law could be minimized. *Id.* at 1283.[1] The

---

1. A court has discretion to delay the effective date of its holding. In *County of Allegheny v. Commonwealth*, 517 Pa. 65, 76, 534 A.2d 760, 765 (1988), the Supreme Court stayed its judgment voiding county funding of the judicial system "to afford the General Assembly an opportunity to enact appropriate funding legislation consistent with this holding." In *PNC Bank Corp.*, there was a disconnect between the judgment and the holding. We

affirmed the award of workers' compensation benefits to a common law spouse, finding that he had satisfied the demands of the common law marriage doctrine. We deferred an effective date of the holding to allow the Supreme Court to review our decision. Before it did so, the General Assembly enacted Act 144. The majority's reliance on *Fiore v. White*, 562 Pa. 634, 643, 757 A.2d 842, 847 (2000) is misplaced. The issue in *Fiore* was whether a

General Assembly responded to these concerns by establishing that the date for "prospective" application of *PNC Bank Corp.* would be January 1, 2005.[2]

In any case, I agree with the majority's holding that Act 144 is the sole basis for determining the date on which common law marriage ended in Pennsylvania. That date is January 1, 2005, and it is the legislature's date that is dispositive in this appeal.

## DISSENTING OPINION BY Judge SIMPSON.

Although I like the result reached in the well-written majority opinion, I reluctantly dissent, because the analysis overlooks an important principle of statutory construction.

The Act of November 24, 2004, P.L. 954, amended Section 1103 of the Domestic Relations Code as follows: "No common law marriage contracted after January 1, 2005, shall be valid. *Nothing in this part shall be deemed or taken to render any common-law marriage otherwise lawful and contracted on or before January 1, 2005, invalid.*" (Emphasis added.) Thus, the act did not expressly take action with respect to common-law marriages contracted before January 1, 2005.

On September 17, 2003, this Court ruled in an *en banc* decision in *PNC Bank Corp. v. Workers' Comp. Appeal Bd. (Stamos),* 831 A.2d 1269 (Pa.Cmwlth.2003) that the doctrine of common-law marriage was prospectively abolished. That was the state of common-law marriages on November 26, 2003, when the marriage in this case was celebrated. Pursuant to the holding in *PNC Bank Corp.,* Claimant's common-law marriage was not lawful or valid.

I respectfully disagree that the General Assembly intended to implicitly change the state of common-law marriages before 2005, resulting in the retroactive validation of Claimant's marriage. Indeed, the opposite presumption is warranted, because statutes are never presumed to make any innovation in existing common law beyond that expressly declared in their provisions. *In re Holton's Estate,* 399 Pa. 241, 159 A.2d 883 (1960); *Pennsylvania Bankers Ass'n v. Pennsylvania Dep't of Banking and Trumark Financial Credit Union,* 893 A.2d 864 (Pa.Cmwlth.2006) (*en banc*); *Inkpen v. Roberts,* 862 A.2d 700 (Pa. Cmwlth.2004); *Borough of Pitcairn v. Westwood,* 848 A.2d 158 (Pa.Cmwlth.2004).

There is no doubt that the General Assembly could have expressly changed the common law on this topic at any time it chose to do so. It chose January 1, 2005, to act. It is error to construe some earlier effective date. Therefore, I would affirm the Workers' Compensation Appeal Board's order which permitted dependent benefits for the son, but denied them for the Claimant.

Judge LEADBETTER joins in this dissent.

---

new rule of law had been effected. *Fiore* did not address when a holding becomes effective.

**2.** Section 1 of the Act of November 24, 2004, P.L. 954 (Act 144) stated:

No common-law marriage contracted after January 1, 2005, shall be valid. Nothing in this part shall be deemed or taken to render any common-law marriage otherwise lawful and contracted on or before January 1, 2005, invalid.

23 Pa.C.S. § 1103.