Bret COONEY (deceased)-Amanda Serrano, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (PATTERSON UTI, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 22, 2014.
Decided June 12, 2014.
Reargument Denied Aug. 1, 2014.

Michael A. Murphy, Pittsburgh, for petitioner.

Michael T. Della Vecchia, Pittsburgh, for respondent Patterson UTI, Inc.

BEFORE: ROBERT SIMPSON, Judge, ANNE E. COVEY, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge SIMPSON.

In this appeal, Amanda Serrano (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming a Workers' Compensation Judge's (WCJ) denial of her fatal claim petition seeking death benefits as a widow under Section 307(3) of the Workers' Compensation Act (Act).[1] The WCJ determined Claimant failed to establish a valid common-law marriage to Bret Cooney (Decedent). Claimant asserted she celebrated a common-law marriage in 2003 in Wyoming, a state that does not recognize common-law marriage. In addition,

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 561.

Claimant and Decedent did not cohabit in Pennsylvania until June 2009, more than four years after Pennsylvania legislatively abolished common-law marriage. Nevertheless, relying primarily on our decision in *Costello v. Workers' Compensation Appeal Board (Kinsley Construction, Inc.)*, 916 A.2d 1242 (Pa.Cmwlth.2007), Claimant contends the Board and the WCJ erred in finding her 2003 common-law marriage invalid despite the language in Section 1103 of the Marriage Law, 23 Pa.C.S. § 1103, which protected "otherwise lawful" common-law marriages contracted on or before January 1, 2005. For the reasons that follow, we affirm.

## I. Background

### A. Decedent's Death; NCP

In January 2011, Decedent sustained a traumatic brain injury, as a result of a drilling rig accident, while working for Patterson UTI, Inc. (Employer). Decedent died six days after the injury. Employer accepted liability for the injury through a notice of temporary compensation payable, which converted to a notice of compensation payable.

### B. Agreement for Children's Dependency Benefits

Claimant and Decedent had two children together. Following Decedent's death, Employer and Claimant entered into an agreement for workers' compensation dependency benefits for Decedent's two minor children. Pursuant to Section 307(1)(b) of the Act, 77 P.S. § 561(1)(b), Employer agreed to pay Claimant, as the natural guardian of Decedent's children, $422.94 in weekly benefits, representing 42% of Claimant's average weekly wage.

### C. Claimant's Fatal Claim Petition

In the agreement, Claimant reserved the right to pursue a fatal claim as a widow. In February 2011, Claimant filed a petition seeking an increase in benefits under Section 307(3) of Act, 77 P.S. § 561(3) (relating to death benefits for a *widow* who is also guardian of the deceased's children). *See* Reproduced Record (R.R.) at 2a–4a. The WCJ treated Claimant's petition as a fatal claim petition.

### D. WCJ's Decision

The WCJ summarized Claimant's testimony as follows. Claimant, a native of Rock Springs, Wyoming, met Decedent in her hometown in late 2002 or early 2003. WCJ Op., 3/27/12, Finding of Fact (F.F.) No. 3(a). Decedent moved to Wyoming to work in the oil and gas industry. *Id.* Within a few months, Claimant and Decedent began living together. *Id.* Sometime thereafter they combined their income to pay their bills. *Id.* They opened a joint checking account and bought vehicles together. Decedent paid for the vehicles, but placed the titles to the vehicles in Claimant's name. *Id.*

Claimant and Decedent had two children together: a son, Damien Cooney, born in May 2004 and a daughter, Lillian Cooney, born in 2008. *Id.* Both children were born while Claimant and Decedent resided in Wyoming. *Id.*

Claimant never formally married Decedent in a church or by a justice of the peace. F.F. No. 3(b). However, approximately one year prior to their son's birth in May 2004, Decedent purchased Claimant a ring and gave it to her saying "You're my wife." F.F. No. 3(b), Notes of Testimony (N.T.), 4/11/11, at 17. Claimant responded "yes, I'm your wife." F.F. No. 3(b), N.T., 7/18/11, at 8. Claimant continued to wear the ring following Decedent's death. F.F. No. 3(b).

Claimant and Decedent introduced themselves as husband and wife. F.F. No.

3(c). Claimant stayed home after the birth of their son Damien. *Id.* Consequently, they lived on Decedent's income alone. *Id.*

In June 2009, as a result of a slowdown in oilfield work in Wyoming, Decedent, Claimant and their two children moved to Pennsylvania. F.F. No. 3(d). They initially lived with Decedent's mother in Wilcox, Pennsylvania. *Id.* Eventually, Decedent found work with Employer in Plum, Pennsylvania. *Id.* Employer provided health insurance for all four family members and paid their health insurance premiums. *Id.*

Upon moving to Pennsylvania, Claimant and Decedent continued to introduce themselves as husband and wife. F.F. No. 3(e). Claimant and Decedent lived together in Plum until Decedent's death in January 2011. *Id.* Decedent's supervisor notified Claimant of Decedent's work accident. *Id.* He requested to speak with "Mrs. Cooney." *Id.*

Claimant introduced several documents into evidence in support of her assertion that she was Decedent's common-law wife. They included: two automobile titles registered in Claimant's name (F.F. No. 4(a)); a bank application indicating Claimant and Decedent signed for a joint account (F.F. No. 4(b)); and, a copy of health insurance cards Employer provided for Claimant and the children as Decedent's dependents (F.F. No. 4(c)).

Employer also submitted several documents into evidence. They included a 2009 W–4 withholding form indicating Decedent claimed single status. F.F. No. 5(a). Employer also submitted Decedent's 2009 1040A tax return, which indicated Decedent filed as head of household. *Id.* In addition, Employer submitted a residential lease agreement signed only by Decedent. F.F. No. 5(b). However, the WCJ noted, on the date Decedent signed the lease, Claimant and the two children still resided with Decedent's mother in Wilcox, Pennsylvania. *Id.*

In reviewing Claimant's petition, the WCJ observed that in order to obtain death benefits under Section 307(3) of the Act, Claimant must establish she married Decedent and is now a widow. The WCJ further recognized that in *PNC Bank Corp. v. Workers' Compensation Appeal Board (Stamos)*, 831 A.2d 1269 (Pa. Cmwlth.2003) (*en banc*), this Court abolished the doctrine of common-law marriage prospectively from the September 17, 2003 date of the decision.

The WCJ further noted the General Assembly, by the Act of November 24, 2004, P.L. 954 (Act 144), amended Section 1103 of the Marriage Law pertaining to common-law marriage. Section 1103 currently provides (with emphasis added):

> No common-law marriage contracted after January 1, 2005, shall be valid. Nothing in this part shall be deemed or taken to render any common-law marriage *otherwise lawful and contracted on or before January 1, 2005* invalid.

23 Pa.C.S. § 1103.

Consequently, the WCJ reasoned, "the issue in this case is whether a common-law marriage existed prior to January 1, 2005." WCJ Op. at 3.

A common-law marriage in Pennsylvania, prior to its abolition by Act 144, could be created by an exchange of words in the present tense spoken with the intent to establish the existence of the marital relationship. *Staudenmayer v. Staudenmayer*, 552 Pa. 253, 714 A.2d 1016 (1998); *PNC Bank*. This exchange of words is known in common law as the *verba in praesenti*. *Id.* A party claiming a common-law marriage bears the burden of producing clear and convincing evidence of the *verba in praesenti*. *Id.* Further, in certain cases, a

putative spouse who cannot establish the creation of a common-law marriage by an exchange of words may be entitled to a rebuttable presumption of marriage by showing constant cohabitation and reputation of marriage. *Id.*

Here, the WCJ noted, although Claimant testified Decedent gave her a ring in Wyoming in 2003 and they exchanged words recognizing they were husband and wife, Claimant does not dispute that Wyoming did not recognize common-law marriage as valid. Consequently, the WCJ reasoned, Claimant and Decedent "*did not have an 'otherwise lawful' marriage in Wyoming.*" F.F. No. 6 (emphasis added). Further, the WCJ observed, Claimant and Decedent did not move to Pennsylvania until 2009, well after Act 144 abolished common-law marriage. *Id.*

The WCJ also rejected Claimant's contention that her 2003 common-law marriage should be recognized in Pennsylvania because it took place prior to 2005 and therefore would have been valid if it took place in Pennsylvania. In short, the WCJ determined no basis existed to find a common-law marriage existed "given the fact it would not be valid where the parties allegedly entered into the common law marriage." F.F. No. 6.

In light of Claimant and Decedent's relocation to Pennsylvania in 2009, well after Act 144's abolition of common-law marriage in the Commonwealth, the WCJ declined to determine whether Claimant's relationship with Decedent in Wyoming constituted a common-law marriage. *Id.* Thus, the WCJ held Claimant failed to establish her entitlement as a widow to death benefits under Section 307(3) of the Act. WCJ Op., Conclusion of Law No. 1.

### E. Board's Opinion and Order

On appeal, the Board affirmed. The Board first focused on our decision in *Costello,* which held that the General Assembly, by enacting Act 144, intended to supersede our decision in *PNC Bank Corp.* and render valid all *otherwise lawful* common law marriages entered into before January 1, 2005. Because Claimant's Wyoming common-law marriage lacked any validity in the state where it was contracted, the Board agreed with the WCJ that Claimant's asserted common-law marriage did not qualify as an *otherwise lawful* marriage for purposes of the temporal exception or "grandfather clause" in 23 Pa.C.S. § 1103. *See* Bd. Op. at 4.

The Board also rejected Claimant's argument, based on *Sullivan v. American Bridge Co.,* 115 Pa.Super. 536, 176 A. 24 (1935), that Pennsylvania does not require a workers' compensation claimant to establish his or her common-law marriage occurred in a state that recognized common-law marriages as valid. The Board distinguished *Sullivan,* and the 1907 U.S. Supreme Court decision it relied upon, *Travers v. Reinhardt,* 205 U.S. 423, 27 S.Ct. 563, 51 L.Ed. 865 (1907), on the basis that the common-law marriages in those cases were "recognized by the states where the couples eventually resided when the couples who had moved from states that did not recognize common-law marriage to the states of Pennsylvania and New Jersey, respectively." Bd. Op., 8/27/13 at 5. "*However, in the instant case, at the time Claimant and Decedent had moved to Pennsylvania, in June of 2009, common-law marriage was no longer recognized in Pennsylvania.*" *Id.* (emphasis added). Consequently, the Board affirmed the WCJ's denial of Claimant's fatal claim petition. Claimant petitions for review.[2]

---

2. This Court's review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether

## II.  Discussion

### A.  Widow's Benefits;  Claimant's Marital Status

Section 307(3) of the Act provides in relevant part:

> In case of death, compensation shall be computed on the following basis, and distributed to the following persons. . . .
>
> \*     \*     \*
>
> (3) To the widow or widower who is the guardian of the deceased's children, payment shall be as follows:
>
> \*     \*     \*
>
> (b) If there are two or more children, a total of sixty-six and two-thirds per centum of wages. . . .

77 P.S. § 561(3)(b).

■ Marriage is a civil contract. *Staudenmayer; PNC Bank*. Historically, there were two forms of marriage: ceremonial and common law. *Id.* A common-law marriage could only be created by an exchange of words in the present tense establishing a marriage contract, or in other words, the legal relationship of husband and wife. *Staudenmayer*. A common-law marriage did not require any specific or magic words. *Id.* All that was needed is proof of an agreement to enter into the legal relationship of marriage. *Id.*

In November 2004, the General Assembly enacted Act 144, which amended 23 Pa.C.S. § 1103 by abolishing common-law marriage as of January 1, 2005. *Id.* However, Section 1103 included a grandfather clause for *otherwise lawful* common-law marriages contracted on or before January 1, 2005.  23 Pa.C.S. § 1103.

As noted above, Claimant asserts she provided clear and convincing evidence of both an exchange of words establishing the marital relationship, and of constant cohabitation and broad reputation of marriage.  Following the creation of the common-law marriage in 2003, Claimant and Decedent lived together in Wyoming as husband and wife.  In June 2009, Claimant, Decedent and their two children moved to Pennsylvania to live with Decedent's mother.  After Decedent found new employment, Claimant and the children followed him to Plum, Pennsylvania. Claimant and Decedent continued to hold themselves out to neighbors, relatives and school officials as husband and wife, until Decedent's death in 2011.

### B.  Argument

#### 1.  *Costello*

Claimant argues the Board ignored Act 144's amendment to 23 Pa.C.S. § 1103, which protected common-law marriages that were valid before January 1, 2005.  In particular, Claimant asserts the workers' compensation authorities misinterpreted our decision in *Costello* by inquiring into whether Wyoming recognized common-law marriage.  Claimant contends such an inquiry has no bearing on Pennsylvania workers' compensation law concerning the validity of common-law marriages.  Essentially, Claimant asserts, our decision in *Costello* interpreted the "otherwise lawful" language in 23 Pa.C.S. § 1103 as applying to the individual capacity of the claimant and the decedent to marry, not as to whether the law of the forum state recognized common-law marriage.

Therefore, Claimant asserts, the Board erred in determining her marriage was invalid in Pennsylvania because Wyoming did not recognize common-law marriages.

---

constitutional rights were violated.  2 Pa.C.S. § 704;  *PPL v. Workers' Comp. Appeal Bd.*

*(Rebo),* 5 A.3d 839 (Pa.Cmwlth.2010).

Claimant does not contest the fact that her common-law marriage was not valid in Wyoming. *See In re Roberts' Estate,* 58 Wyo. 438, 133 P.2d 492, 502 (1943). However, she argues the Board's interpretation of the language "any common-law marriage otherwise lawful" in 23 Pa.C.S. § 1103 to mean any common-law marriage *recognized by the forum state as lawful* is contrary to our decision in *Costello.*

Claimant maintains a virtually identical argument was raised and rejected in *Costello.* There, the WCJ determined the claimant, Lori Newhart Costello, and the decedent, Joseph Costello, entered into a valid common-law marriage in Pennsylvania on November 26, 2003, the date they executed a notarized document titled "Confirmation of Common Law Marriage." *Costello,* 916 A.2d at 1243. The confirmation stated in part:

> We, the undersigned, do affirm that our relationship is intended to comply with Pennsylvania law creating a Common law Marriage.
>
> In is our intent to have a marital relationship.
>
> We have co-habitated or will co-habitate as husband and wife and hold ourselves out to the community as married.
>
> We are free of any impediment to marriage to another party and all prior marriages have ended in a decree of divorce.

*Id.* at 1243 n. 1.

However, timing was a problem. Because the Costellos executed their confirmation of marriage document after this Court's decision in *PNC Bank Corp.,* which prospectively abolished common-law marriage, the Board determined the WCJ erred in finding that Act 144's amendment to 23 Pa.C.S. § 1103 validated common-law marriages formed prior to January 1, 2005. In reversing the Board, we stated:

The Court therefore holds that in enacting Act 144 the legislature intended to and did adopt legislation that rendered valid all 'otherwise lawful' common 'law marriages entered into before January 1, 2005, thereby superseding the decision in *PNC Bank Corp.*

*Costello,* 916 A.2d at 1248 (footnote omitted).

In *Costello,* this Court explained the term "otherwise lawful" in 23 Pa.C.S. § 1103 did not refer to *PNC Bank Corp.,* which held common-law marriages became unlawful after September 17, 2003. To do so, we reasoned, would render the statutory language "otherwise lawful and contracted on or before January 1, 2005" mere surplusage. *Costello.*

Rather, we continued, "A more logical interpretation of Section 1103 is that the 'common law marriage otherwise lawful' refers to any of the various reasons that previously might have rendered such a marriage unlawful, such as lack of divorce from a previous marriage." *Costello,* 916 A.2d at 1247–48.

In other words, Claimant urges, under *Costello,* the issues were simply whether the conduct of the couple satisfied the traditional elements of a common-law marriage under Pennsylvania law, which Claimant and Decedent clearly did. Here, there were no impediments to a finding of common-law marriage, such as a lack of divorce from a previous marriage. Therefore, Claimant asserts her common-law marriage to Decedent was valid under 23 Pa.C.S. § 1103 as interpreted by *Costello.*

### 2. *Sullivan*

As further support for her position that Pennsylvania workers' compensation law recognizes common-law marriages regardless of the state where they occurred, Claimant cites *Sullivan.* In December 1925, the claimant and the decedent in

*Sullivan* decided to get married. Although residents of Camden, New Jersey, they drove to Elkton, Maryland, for the purpose of entering into a ceremonial marriage. Lacking a witness, the couple exchanged vows anyway and returned to New Jersey, where they resided as husband and wife. The couple eventually cohabited in Pennsylvania. In April 1933, while in the course of employment, Decedent was killed.

In finding a valid Pennsylvania common-law marriage in *Sullivan*, the Superior Court reasoned, had the claimant and decedent exchanged their vows in New Jersey or Pennsylvania, rather than Maryland, their marriage would have been valid anywhere. Thus, citing *Sullivan*, Claimant argues there is no requirement in Pennsylvania that a workers' compensation claimant establish that his or her common-law marriage was valid in the state where the acts establishing the common-law marriage took place.

Similarly, Claimant argues there is no indication that 23 Pa.C.S. § 1103 required that she and Decedent travel to Pennsylvania before 2005 to validate their common-law marriage. Because Claimant's 2003 common-law marriage pre-dated the January 1, 2005 effective date of Act 144's abolition of common-law marriage, Claimant asserts her common-law marriage to Decedent must be upheld. *Costello*. As such, Claimant asserts she is entitled to death benefits under Section 307(3) of the Act as Decedent's widow. *Id.*

### C. Analysis

■ As discussed above, prior to January 1, 2005, a common-law marriage in Pennsylvania could be created by an exchange of words in the present tense spoken with the intent to establish the existence of the marital relationship. *Staudenmayer; PNC Bank Corp.* A par-

ty claiming a common-law marriage bears the burden of producing clear and convincing evidence of the exchange of words creating the marriage contract. *Id.*

However, on September 17, 2003, this Court ruled in an *en banc* decision in *PNC Bank Corp.*, that the doctrine of common-law marriage was abolished and that the rule in *PNC Bank Corp.* would be applied prospectively to any common-law marriages entered into after that date.

Following *PNC Bank Corp.*, a split between the Commonwealth Court and the Superior Court arose as to the continued validity of common-law marriages. *See, e.g., Bell v. Ferraro*, 849 A.2d 1233 (Pa.Super.2004) (Superior Court sided with Supreme Court in *Staudenmayer* and deferred abolition of common-law marriage to the legislature).

Ultimately, in Act 144, the General Assembly abolished common-law marriage by amending Section 1103 of the Marriage Law. Section 1103 now provides (with emphasis added):

> No common-law marriage contracted after January 1, 2005, shall be valid. Nothing in this part shall be deemed or taken to render any common-law marriage *otherwise lawful and contracted on or before January 1, 2005* invalid.

23 Pa.C.S. § 1103.

Thereafter, in *Costello*, we resolved any perceived conflict between *PNC Bank Corp.* and the amendment to 23 Pa.C.S. § 1103 by determining the General Assembly, in adopting Act 144, "rendered valid all 'otherwise lawful' common law marriages entered into before January 1, 2005, thereby superseding the decision in *PNC Bank Corp.*" *Costello*, 916 A.2d at 1248. Therefore, we determined the claimant in *Costello* was entitled to benefits as a wid-

ow with one child under Section 307(3) of the Act.

Here, Claimant's primary argument is that our decision in *Costello* interpreted the term "otherwise lawful" in 23 Pa.C.S. § 1103 as applying to the individual capacities of the claimant and the decedent to marry rather than whether the law of the state where the parties resided recognized common-law marriage. Essentially, Claimant relies on the following discussion in *Costello*:

> [The employer] appears to argue that if Section 1103 of the Marriage Law is interpreted as a blanket violation of common law marriages before January 1, 2005, than the qualifying phrase 'otherwise lawful' will be rendered surplusage. *The Court points out that [the employer's] interpretation, that all common law marriages became unlawful after September 17, 2003 and the legislature intended no change, renders the entire Act mere surplusage.* A more logical interpretation of Section 1103 is that the 'common law marriage otherwise lawful' refers to any of various reasons that previously might have rendered such a marriage unlawful, such as a lack of divorce from a previous marriage.

*Id.* at 1248 (emphasis added).

A review of the above-quoted language clearly indicates that this Court, speaking through Judge Smith–Ribner, rejected the employer's specific contention that the phrase "otherwise lawful" referred solely to cases filed before this Court's decision in *PNC Bank Corp.* The common-law marriage in *Costello* took place *in Pennsylvania* after *PNC Bank Corp.* In determining the amendment to 23 Pa.C.S. § 1103 superseded *PNC Bank Corp.*, the Court interpreted the phrase "otherwise lawful" as referring to "*any of various reasons that previously might have rendered such a*

*marriage unlawful ....*" *Costello,* 916 A.2d at 1248 (emphasis added).

Most importantly, *Costello* did not address the validity of a common-law marriage formed in a state that did not recognize common-law marriages. Thus, we cannot accept Claimant's argument that the interpretation of the phrase "otherwise lawful" in *Costello* would include recognition of out-of-state common-law marriages, regardless of where they occurred, as long as the couple met the traditional elements of a common-law marriage in Pennsylvania.

■ We reject Claimant's argument that determination of validity of a common-law marriage for current purposes is dependent solely on timing, untethered to location. This is because "Pennsylvania follows the general rule that the validity of a marriage is determined by the law of the place where it was contracted." *E.g., Commonwealth v. Case,* 200 Pa.Super. 200, 189 A.2d 756, 759–60 (1963).

■ Rather, we believe a more reasonable interpretation of the phrase "otherwise lawful" in 23 Pa.C.S. § 1103 would necessarily include consideration of where the parties resided when they entered into a common-law marriage prior to 2005. Here, Claimant, a Wyoming native, stated in her brief: "Claimant has always acknowledged that common law marriage was not recognized in Wyoming at the time." Am. Br. of Pet'r. at 17, n. 1. Moreover, even assuming Decedent, a Pennsylvania native, was unaware that Wyoming did not recognize common-law marriages, the Wyoming Supreme Court reaffirmed the invalidity of common-law marriage in Wyoming in its 1943 decision in *In re Roberts Estate.* As such, Claimant and Decedent were never lawfully married prior to January 1, 2005. *Id.*

■ Therefore, even though Claimant and Decedent had no personal impediments to marriage such as an existing previous marriage, they did not have an "otherwise lawful" common-law marriage prior to January 1, 2005 for the simple reason that Wyoming, where Claimant asserted they married and lived together as husband and wife from 2003 to June 2009, did not recognize common-law marriages. We believe this interpretation of 23 Pa. C.S. § 1103 is consistent with our language in *Costello* that the phrase "otherwise lawful" refers to "*any of various reasons that previously might have rendered such a marriage unlawful ....*" *Costello*, 916 A.2d at 1248 (emphasis added); *see also Lennitt v. Dep't of Corr.*, 964 A.2d 37, 41 (Pa.Cmwlth.2008) (noting in dicta that a prisoner could establish he was not married by proving his purported common-law marriage occurred in New Jersey, a state that abolished common-law marriage in 1939).

Nonetheless, in addition to *Costello*, Claimant also relies on *Sullivan* for the proposition that Pennsylvania does not require a workers' compensation claimant to establish his or her common-law marriage occurred in one of the few remaining states that still recognize common-law marriages. Claimant further asserts 23 Pa.C.S. § 1103 does not expressly require that a common-law couple prove they relocated or visited Pennsylvania prior to 2005 to establish a valid common-law marriage.

We disagree. In *Sullivan,* the claimant and decedent, residents of New Jersey, attempted to celebrate a common-law marriage in Maryland, a state that required more formality. After the attempted celebration, they returned to New Jersey, where they cohabited and held themselves out as husband and wife. This occurred when New Jersey still recognized common-law marriages.

Further, the couple moved to Allentown, Pennsylvania. They continued to cohabit, and they continued to hold themselves out as husband and wife.

In determining the couple established a valid common-law marriage in Pennsylvania based in part on their oral statements in Maryland that they were each other's spouses, the Superior Court noted the couple thereafter lived together as husband and wife in New Jersey and Pennsylvania. More specifically, the Court stated:

It is unquestioned that the claimant and John Sullivan had no intention of entering into a meretricious relation. They went to the courthouse at Camden, N.J., and to Elkton, Md., for the express purpose of getting married. They intended to marry each other then—at the present time—not at some time in the future—and believed they had done so. They were under the impression that in using the words which they did they were entering into a valid marriage. They intended to do so, and believe they contracted a valid marriage. There were no disabilities existing which prevented their contracting a valid marriage; *and when they came back to New Jersey they believed they were lawfully married, and from that time on acted toward each other as husband and wife. Had they done in New Jersey or Pennsylvania what they did in Maryland, it would have been a valid marriage anywhere.* The words spoken were in the present tense and uttered with the intent of establishing the relation of husband and wife. The parties did not afterwards make a new contract in verba de praesenti in New Jersey, because they thought they had lawfully married each other in Maryland and never knew otherwise.

*Id.* (emphasis added).

We believe *Sullivan* is distinguishable from the present case. This is because the

couple lived together as husband and wife in New Jersey and in Pennsylvania at a time when both states recognized common-law marriage.

In *Sullivan,* the Superior Court relied upon the U.S. Supreme Court's 1907 decision in *Travers v. Reinhardt,* which determined that, despite a flawed ceremonial marriage, the couple's more than 18 years together as husband and wife in New Jersey established a valid common-law marriage. The *Travers* majority, speaking through Justice Harlan, reasoned (with emphasis added):

> We are of opinion that even if the alleged marriage would have been regarded as invalid in Virginia for want of license, had the parties remained there, and invalid in Maryland for want of religious ceremony, had they remained in that state, *it was to be deemed a valid marriage in New Jersey after James Travers and the woman Sofia, as husband and wife, took up their permanent residence there and lived together in that relation, continuously, in good faith, and openly, up to the death of Travers, being regarded by themselves and in the community as husband and wife. Their conduct towards each other in the eye of the public, while in New Jersey, taken in connection with their previous association, was equivalent in law, to a declaration by each that they did, and during their joint lives were to, occupy the relation of husband and wife. Such a declaration was effective to establish the status of marriage in New Jersey as if it had been made in words of the present tense in that state.*

*Travers,* 205 U.S. at 440, 27 S.Ct. 563.

■ In distinguishing the present case from *Sullivan* and *Travers,* we note that the couples in those cases eventually lived together as husband and wife while in states that recognized common-law mar-

riage. Here, however, Claimant and Decedent neither entered into a common-law marriage nor resided as husband and wife while in a state that recognized common-law marriage. Consequently, even assuming Claimant and Decedent attempted to celebrate a common-law marriage in Wyoming in 2003, and then lived together as husband and wife in Pennsylvania beginning in June 2009, this would be insufficient to establish a valid common-law marriage under 23 Pa.C.S. § 1103. *Costello.*

### III. Conclusion

Claimant's 2003 alleged common-law marriage in Wyoming was invalid under the laws of that state. In addition, Claimant and Decedent did not live together as husband and wife in Pennsylvania until June 2009. Thus, they never performed the acts which would satisfy proof of a common-law marriage while in a state that recognized such a union at the time. Given these circumstances, we discern no error in the determinations by the Board and the WCJ that Claimant failed to prove the existence of an otherwise lawful common-law marriage, contracted on before January 1, 2005, for purposes of establishing a valid common-law marriage under Section 1103 of the Marriage Law, 23 Pa. C.S. § 1103. As such, the WCJ properly denied Claimant's fatal claim for widow's death benefits under Section 307(3) of the Act. Therefore, we are constrained to affirm.

We emphasize that our denial of Claimant's petition for widow's benefits in no way jeopardizes Decedent's minor children's right to dependency benefits under Section 307(1)(b) of the Act, 77 P.S. § 561(1)(b).

### *ORDER*

**AND NOW,** this 12th day of June, 2014, for the reasons stated in the foregoing

opinion, the order of the Workers' Compensation Appeal Board is **AFFIRMED.**